**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.** ~~202626~~-**cv-**~~1929~~01929**-SKC-TPO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
DENVER POLICE DEPARTMENT,

      Defendants.

_____

**FIRST AMENDED COMPLAINT** ~~FOR DECLARATORY AND INJUNCTIVE RELIEF~~
_____

Plaintiff~~, the United States of America~~ submits the following First Amended Complaint against Defendant City and County of Denver (the "City") and Defendant Denver Police Department (the "Department"). The City and the Department shall be referred to herein collectively as "Defendants."

### ~~I.~~ INTRODUCTION

1. The Second Amendment to the United States Constitution declares that "the right of the people to keep and bear arms shall not be infringed." U.S. CONST. amend. II.

2. The Second Amendment protects the right of law-abiding citizens to keep and bear arms in common use for lawful purposes. *D.C. v. Heller*, 554 U.S. 570, 625 (2008).

3. The right to keep and bear arms recognized in the Second Amendment is made applicable to the states by the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010).

4. Pursuant to Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c) (the "~~Ordinance~~AR Ban"), it is a crime to carry, store, keep, manufacture, sell, or otherwise possess a so-called "assault weapon" (as defined in Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-116(1)) within the City.

5. The ~~Ordinance~~AR Ban uses politically charged rhetoric. The term "assault weapon" is not a technical term used in the firearms industry. Rather, as Justice Thomas has aptly noted, "assault weapon" is a rhetorically charged political term developed by anti-gun publicists. *See Stenberg v. Carhart*, 530 U.S. 914, 1001 n.16 (2000) (Thomas, J., dissenting) (quoting Bruce H. Kobayashi & Joseph E. Olsen, *In Re 101 California Street: A Legal and Economic Analysis of Strict Liability for the Manufacture and Sale of "Assault Weapons,"* 8 Stan. L. & Pol'y Rev., Winter 1997 41, 43) ("Prior to 1989, the term assault weapon did not exist in the lexicon of firearms. It is a political term, developed by anti-gun publicists to expand the category of assault rifles so as to allow an attack on as many additional firearms as possible on the basis of undefined evil appearance." (internal quotation marks omitted)).

6. In reality, the firearms the City calls "assault weapons" include ordinary semiautomatic rifles possessed by millions of law-abiding Americans. Indeed, Americans own literally *tens of millions* of AR-15 style rifles, the paradigmatic "assault weapon" covered by the ~~Ordinance~~AR Ban. As the Supreme Court has recently recognized, the AR-15 is the most popular rifle in America. *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025).

7. When the City banned AR-15 style rifles with standard capacity magazines, it banned an arm in common use for lawful purposes by law-abiding citizens. Therefore, the ~~Ordinance~~AR Ban violates the Second Amendment, and the United States brings this action to

vindicate the rights of Denver citizens whose rights have been—and are continuing to be—violated by Defendants.

8. In addition, Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g) (the "Magazine Ban") bans so-called "large capacity" magazines. In reality, the Magazine Ban bans ordinary standard capacity magazines owned by millions of law-abiding Americans who use them for lawful purposes. Accordingly, the Magazine Ban also violates the Second Amendment.

**PARTIES**

9. Plaintiff is the United States of America.

10. The City and County of Denver is a Colorado municipal corporation.

11. The Denver Police Department is a department of the City established in its charter. The Department is a law enforcement agency.

**JURISDICTION AND VENUE**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

13. The Court has authority to grant the remedies Plaintiff seeks pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601. And the United States is authorized to initiate this action against Defendants under that Act.

14. The declaratory and injunctive relief that the United States seeks is authorized by 34 U.S.C. § 12601(b) and 28 U.S.C. §§ 2201 and 2202.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred therein.

3

## GENERAL ALLEGATIONS

A.     The Ordinance

I.     The AR Ban Is Unconstitutional.

      A.     Provisions of the AR Ban

16.     Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c) states in relevant part: "It shall be unlawful to carry, store, keep, manufacture, sell, or otherwise possess assault weapons within the City and County of Denver."

17.     Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-116(1) defines "assault weapon" as follows:

> Assault weapon means any of the following firearms:
>
> a. Any semiautomatic pistol or centerfire rifle, either of which have a fixed or detachable magazine with a capacity of more than fifteen (15) rounds.
>
> b. Any semiautomatic shotgun with a folding stock or a magazine capacity of more than six (6) rounds or both.
>
> c. Any part or combination of parts designed or intended to convert a firearm into a weapon identified in paragraphs a or b of this subsection (1), if those parts are in the possession or under the control of the same person.
>
> d. Any firearm which has been modified to be operable as a weapon identified in paragraphs a or b of this subsection (1).

      B.     Standard of Review

18.     In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

*Id*., 597 U.S. at 24.

4

19.    Under step one of the *Bruen* test, when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  Another way of saying this is that a law that restricts conduct covered by the plain text of the Second Amendment is presumptively unconstitutional.

20.    At step two, the government—i.e., the Defendants, here—has an opportunity to rebut any presumption of unconstitutionality that arose under step one by demonstrating that its regulation is consistent with the Nation's historical tradition of firearm regulation.  "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id*.

21.    Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (internal citation and quotation marks omitted).

C.    Under *Bruen* Step One, the ~~Ordinance~~AR Ban Is Presumptively Unconstitutional

22.    The ~~Ordinance~~AR Ban makes it a crime to keep and bear AR-15 style rifles with standard capacity magazines. *See Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 2026 WL 2075513, at \*24 (3d Cir. July 17, 2026) (*ANJRPC*) ("AR-15s . . . typically come standard with twenty- or thirty-round magazines.").  AR-15 rifles are bearable arms.  Therefore, the ~~Ordinance~~AR Ban implicates the plain text of the Second Amendment.  Under *Bruen* step one, the ~~Ordinance~~AR Ban is presumptively unconstitutional.  As set forth below, Defendants will not be able to rebut this presumption.

D.    Tens of Millions of Law-Abiding Americans Own AR-15 Style Rifles with Standard Capacity Magazines

5

23.     There is no historical tradition of banning arms in common use.  Therefore, the Second Amendment protects arms typically possessed by law-abiding citizens for lawful purposes that are in "common use" today.  *United States v. Morgan*, 150 F.4th 1339, 1346 (10th Cir. 2025) (internal citations and quotation marks omitted).  The ~~Ordinance~~AR Ban bans AR-15 style rifles with standard capacity magazines. As set forth in this section, Americans own and use for lawful purposes tens of millions of AR-15 style rifles with standard capacity magazines.  Accordingly, in this action, Plaintiff seeks an injunction prohibiting the City's law enforcement officers from engaging in a pattern or practice of conduct pursuant to which they enforce the City's prohibition on the possession of AR-15 style rifles with standard capacity magazines.

24.     As of 2021, there were at least twenty-eight million AR-style semiautomatic rifles in circulation.  *NSSF Releases Most Recent Firearm Production Figures*, Nat'l Shooting Sports Found.  (Jan. 11, 2024) (available at https://perma.cc/C533-T8TV).[1]

25.     Roughly 2.8 million AR-style semiautomatic rifles entered the market in 2020 alone, making up around 20% of all firearms sold that year.  Cong. Rsch. Serv., House-Passed Assault Weapons Ban of 2022 (H.R. 1808), 2 (Aug. 4, 2022); Nat'l Shooting Sports Found., Firearms Retailer Survey Report, 9 (2021) (available at https://perma.cc/ZQC3-WNHH).

26.     Various studies estimate that at least 16 million, but possibly up to 24.6 million, Americans own or have owned AR-style rifles.  *See* Emily Guskin, Aadit Tambe & Jon Gerberg, *Why Do Americans Own AR-15s?*, Wash. Post (Mar. 27, 2023), (estimating that about 16 million Americans—approximately 20% of gun owners—own AR-15-style rifles); William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned*, 33 (May 13, 2022) (available at https://perma.cc/9L8W-Y3HT) (estimating that 24.6 million Americans—

---

[1] The statistics in this section are drawn from *Bianchi*, 111 F.4th 518–19 (Richardson, J., dissenting).

approximately 30% of gun owners—have owned an AR-15 or similarly styled rifle); *see* also Nat'l Shooting Sports Found., *Sport Shooting Participation in the U.S. in 2020*, pg. iii (2020), (available at https://perma.cc/G353-9XME) (reporting that over 20 million American adults participated in target shooting with AR-15-style rifles).

27.    These rifles are widely owned for many lawful purposes.  One survey from 2021 found that the most commonly reported reasons for owning AR-style rifles are recreational target shooting (66% of respondents), home defense (61.9%), hunting (50.5%), defense outside the home (34.6%), and competitive sports shooting (32.1%).  English, *supra*, at 33–34.  Another survey conducted in 2022 found that respondents reported self-defense (65%), target shooting (60%), the potential breakdown of law and order (42%), and hunting (18%) as major reasons for owning AR-15s.  Guskin, Tambe & Gerberg, *supra*.

28.    Semiautomatic rifles like the AR-15 are common for lawful purposes.  ~~*Bianchi*, 111 F.4th at 519 (Richardson, J., dissenting).~~*ANJRPC* at \*17.  Indeed, for many years now, this question has been "beyond debate."  *Id.* (quoting *Kolbe v. Hogan*, 849 F.3d 114, 156 (4th Cir. 2017) (Traxler, J., dissenting)).  In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court contrasted semiautomatic rifles like AR-15s with "machineguns, sawed-off shotguns, and artillery pieces," finding that the former are "commonplace," "generally available," and "widely accepted as lawful possessions."  *Id.* at 603, 610–12.  *See also Heller v. D.C.* ("*Heller II*") 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("We think it clear enough in the record that semiautomatic rifles ... are indeed in 'common use . . . .'"); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255 (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici, the assault weapons . . . at issue are 'in common use' as that term was used in *Heller*.");[2]

---

[2] The Second Circuit's holding in this respect was not disturbed by the more recent *Nat'l Ass'n for Gun Rts. v. Lamont*, 153 F.4th 213 (2d Cir. 2025).

*Friedman v. City of Highland Park*, 577 U.S. 1039 (2015) (mem.) (Thomas, J., joined by Scalia, J., dissenting from the denial of certiorari) (explaining that semiautomatic rifles like the AR-15 are commonly owned for lawful purposes); *see* also *Heller II*, 670 F.3d at 1287 (Kavanaugh, J., dissenting) ("Semi-automatic rifles have not traditionally been banned and are in common use today, and are thus protected under *Heller*."). Justice Kagan recently noted that "[t]he AR–15 is the most popular rifle in the country." *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025). *See* also *Garland v. Cargill*, 602 U.S. 406, 429-30 (2024) (Sotomayor, J., dissenting) (AR-15s are "commonly available, semiautomatic rifles"). In 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives described AR-15 style rifles as "one of the most popular firearms in the United States," including for "civilian use." *Bianchi*, 111 F.4th at 520 (quoting *Definition of 'Frame or Receiver' and Identification of Firearms*, 87 Fed. Reg. 24652, 24652, 24655 (Apr. 26, 2022)).

29. The Tenth Circuit has recognized the numerosity and common use of the AR-15 in America. In *United States v. Morgan*, the Tenth Circuit stated: "*See also . . . Snope v. Brown*, ~~605 U.S.    ,    ,~~145 S.Ct. 1534~~,    L.Ed.2d~~ (2025) (Kavanaugh, J., respecting the denial of certiorari) (noting there was a "*strong argument that AR-15s are in 'common use'*" because "millions of Americans own AR-15s" and they "are legal in 41 of the 50 states")." *Id.*, 150 F.4th at 1346 n.5 (emphasis added).

30. AR-15 type rifles are not commonly used by criminals. According to the FBI, in 2019 only 364 homicides were known to have been committed with *rifles of any type*, compared to 6,368 with handguns, 1,476 with knives or other cutting instruments, 600 with personal weapons (hands, feet, etc.) and 397 with blunt objects. *See* Expanded Homicide Table 8, Crime in the United States (2019), https://bit.ly/3HdolNd.

8

31.    The State of Colorado has previously stipulated that in states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds, and the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds. *See* stipulations entered into in *Colorado Outfitters Assoc. v. Hickenlooper*, Case No. 13-cv-1300 (D. Colo.) and *Rocky Mountain Gunowners v. Hickenlooper*, Case No. 2013CV33879 (Denv. Dist. Ct.).

32.    According to the National Shooting Sports Foundation's Detachable Magazine Report (1990 – 2021), in the United States there are at least 448 million magazines with a capacity in excess of 15 rounds.

33.    In summary, there cannot be the slightest question that millions of Americans have chosen to equip themselves with AR-15 style rifles with standard capacity magazines, and they use those ordinary semiautomatic rifles for a variety of lawful purposes, including but not limited to self-defense.

## ~~E~~II.    The Magazine Ban Is Unconstitutional

### A.    Text of the Ordinance

34.    Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-116(11) defines the term "Large capacity ammunition feeding device" as follows:

> A magazine, belt, drum, feed strip, or similar device for a firearm manufactured after September 13, 1994, that has a capacity of, or that can be readily restored or converted to accept, more than fifteen (15) rounds of ammunition. The term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition, or a fixed device for a manually operated firearm, or a fixed device for a firearm listed in 18 U.S.C. 922, appendix A.

35.    With exceptions not relevant to this action, Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g) states:  "It shall be unlawful to carry, store, or otherwise possess a large

capacity ammunition feeding device which can hold or may be modified to hold more than fifteen (15) rounds . . .”

### B.      Magazines Are “Arms”

36.      “When ‘a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate of that act.’   Antonin Scalia & Bryan A. Garner, *Reading Law: the Interpretation of Legal Texts* 96, 192–94 (2012) (explaining Predicate-act canon); *see also Luis v. United States*, 578 U.S. 5 (2016) (Thomas, J., concurring) (“Constitutional rights . . . implicitly protect those closely related acts necessary to their exercise.”); *Ortega v. Grisham*, 148 F.4th 1134, 1143 (10th Cir. 2025).  Detachable magazines such as those banned by the State fall into this category.  *ANJRPC* at \*22 (magazine required for firing process).

37.      The Magazine Ban bans bearable arms.  Therefore, the Magazine Ban implicates the plain text of the Second Amendment.  Under *Bruen* step one, the Magazine Ban is presumptively unconstitutional.  *Id*. at \*23.  As set forth below, Defendants will not be able to rebut this presumption.

### C.      The Banned Magazines Are in Common Use

38.      There is no historical tradition of banning arms in common use.  Therefore, the Second Amendment protects arms typically possessed by law-abiding citizens for lawful purposes that are in “common use” today.  *United States v. Morgan*, 150 F.4th 1339, 1346 (10th Cir.) (internal citations and quotation marks omitted).

39.      The National Shooting Sports Foundation (“NSSF”) is the trade association of the firearms industry.  According to the NSSF Detachable Magazine Report (1990 – 2021), in the United States there are at least 448 million magazines with a capacity in excess of 15 rounds.

40.     Magazines like those banned by the Magazine Ban "are in common use for lawful purposes." *ANJRPC* at \*24.  Therefore, the Magazine Ban violates the Second Amendment.  *See id*. at 25.

41.     The State of Colorado has a law similar to the Magazine Ban.  *See* Colo. Rev. Stat. § 18-12-302.  Plaintiff is challenging the state law in *United States v. State of Colorado*, Civil Action No. 26-cv-01950-SKC-TPO (the "State Case").  Plaintiff filed its complaint in the State Case at about the same time that it filed its complaint in this case and the case remains pending.  Defendants assert that Plaintiff is obligated to duplicate the State Case in this action to meet the redressability requirement of standing.  Plaintiff contends that challenging the city law and the state law simultaneously in the same court before the same judge at the same time meets the redressability requirement.  For that reason, Plaintiff elects not to duplicate the State Case in this case.  If the Court disagrees, Plaintiff reserves the right to amend its complaint again.

### III.    The Department's Law Enforcement Officers

42.     Pursuant to Denver, Colo., Charter art. II, pt. 6 § 2.6.5, it is the duty of the Department's police officers (hereinafter "Denver Law Enforcement Officers") to apprehend any and all persons in the act of committing any offense against the laws of the State of Colorado or of the City's ordinances.

43.     The ~~Ordinance is one of~~AR Ban and the ~~City's~~Magazine Ban are City ordinances.

44.     Thus, Denver Law Enforcement Officers are under a duty to enforce the ~~Ordinance~~AR Ban and the Magazine Ban.

45.     Pursuant to Colo. Rev. Stat. § 16-3-108, when a court issues an arrest warrant in connection with an alleged violation of the ~~Ordinance~~AR Ban or the Magazine Ban, it commands

11

the Denver Law Enforcement Officers involved to arrest the person named in the warrant "and to take the person without unnecessary delay before the nearest judge of a court of record."

46.    Denver Law Enforcement Officers have, in fact, routinely enforced the OrdinanceAR Ban and the Magazine Ban for many years and will continue to do so in the future unless enjoined.

**FIV.    The United States Is Authorized to Bring This Action under 34 U.S.C. § 12601**

47.    As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers … that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

48.    The City is a governmental authority, as that term is used in Section 12601(a).

49.    The Department is a governmental authority, as that term is used in Section 12601(a).

50.    Denver Law Enforcement Officers are agents of (and are otherwise acting on behalf of) the City and the Department for purposes of enforcing the City's criminal laws, including the Ordinance. AR Ban and the Magazine Ban.

51.    Denver Law Enforcement Officers are fulfilling (and will continue to fulfill unless enjoined) their statutory duty to enforce the criminal laws of the City, including the Ordinance.AR Ban and the Magazine Ban.  When Denver Law Enforcement Officers enforce the OrdinanceAR Ban and the Magazine Ban, they are engaging in a pattern or practice of conduct by law enforcement officers.

52.    As set forth above, the Ordinance violatesAR Ban and the Magazine violate the Second Amendment.  Accordingly, there is a pattern or practice of conduct by Denver Law

12

Enforcement Officers that deprives persons of rights, privileges, or immunities secured or protected by the Constitution.  Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

53.    34 U.S.C. § 12601(b) ("Section 12601(b)") states:

**Civil action by Attorney General** Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[3] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

54.    The United States brings this action pursuant to the authority set forth in Section 12601(b) to remedy Defendants' violation of Section 12601(a).

**FIRST CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**

55.    Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

56.    Defendants have engaged in a pattern or practice of conduct by law enforcement officers that deprives persons of rights secured and protected by the Constitution in violation of 34 U.S.C. § 12601(a).

57.    Unless this Court enjoins Defendants and also grants the declaratory relief the United States describes below, Defendants will continue to engage in a pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights to acquire and possess arms protected by the Second Amendment.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A.    Entry of a declaratory judgment pursuant to 28 U.S.C. § 2201(b), declaring that:

    (1)    The City is a "governmental authority" as that term is used in Section 12601(a);

---

[3] [*sic*] This should state "paragraph (b)."

**Formatted:** Keep with next, Keep lines together

(2)  The Department is a "governmental authority" as that term is used in Section 12601(a);

(3)  The Denver Law Enforcement Officers (as defined above) are "law enforcement officers" as that term is used in Section 12601(a);

(4)  When the Denver Law Enforcement Offices enforce the ~~Ordinance~~AR Ban and the Magazine Ban, they are acting as agents of (or otherwise acting on behalf of) the Defendants;

(5)  When the Denver Law Enforcement Officers enforce the ~~Ordinance~~AR Ban and the Magazine Ban, they are engaging in a pattern or practice of conduct by law enforcement officers; and

(6)  The effect of that pattern or practice of conduct is to deprive the citizens of Denver of rights guaranteed by the Second Amendment.

B.  Entry of permanent injunctive relief pursuant to Fed. R. Civ. P. 65 enjoining Defendants and their agents from enforcing the ~~Ordinance~~Magazine Ban and the AR Ban to the extent it bans the possession of AR-15 style rifles with standard capacity magazines, including an order that:

(1)  Defendants and their agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

(2)  Defendants and their agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

(3)  Defendants adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

C.  Such other and additional relief as the interests of justice may require.

DATED: May 5, 2026

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

JESUS OSETE
Principal Deputy Assistant Attorney General

R. JONAS GEISSLER
Deputy Assistant Attorney General

*/s/ Barry K. Arrington*
BARRY K. ARRINGTON
Acting Chief
Second Amendment Section

PATRICK TODD
AUSTIN ARTZ
Trial Attorneys
Second Amendment Section

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone:(202) 304-8447
E-Mail: barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

15