**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-01929-SKC-TPO**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
DENVER POLICE DEPARTMENT,

      Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT**

---

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 3

   I.  Denver's Ordinance............................................................................................... 3

   II.  Section 12601 ..................................................................................................... 5

   III. The Department of Justice's Use of Section 12601 ........................................... 9

   IV. This Case ........................................................................................................... 11

LEGAL STANDARD ................................................................................................... 12

ARGUMENT ................................................................................................................. 13

   I.  The United States Lacks Standing ..................................................................... 13

   II. The United States's Challenge is Not Cognizable Under Section 12601 ........ 16

      A.  The text of Section 12601 authorizes a cause of action
          targeting law enforcement officer misconduct, not facial challenges to
          state and local laws ..................................................................................... 17

      B.  Additional context confirms Section 12601's targeted focus ..................... 21

          1.  Civil rights remedies before Section 12601 ........................................... 22

          2.  Other "pattern or practice" statutes....................................................... 23

          3.  Past enforcement practice ...................................................................... 25

          4.  Federalism principles ............................................................................. 26

      C.  Legislative history reinforces the meaning of
          Section 12601 .............................................................................................. 28

   III. The Amended Complaint Fails to Allege a Pattern or
      Practice of Conduct by Law Enforcement Officers ......................................... 29

CONCLUSION ............................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Aleman Hernandez v. Baltazar,*
No. 1:25-cv-03688, 2025 WL 3718159
(D. Colo. Dec. 23, 2025) ....................................................................................... 20

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*
--- F.4th ----, 2026 WL 2075513 (3d Cir. July 17, 2026)
(en banc), *stay of mandate granted* (Aug. 4, 2026)...................................................... 1

*Atwater v. City of Lago Vista,*
532 U.S. 318 (2001)................................................................................................ 27

*Audubon of Kan., Inc. v. U.S. Dep't of Interior,*
67 F.4th 1093 (10th Cir. 2023)............................................................................... 13

*Barnett v. Raoul,*
180 F.4th 1035 (7th Cir. 2026)................................................................................. 1

*Biden v. Nebraska,*
600 U.S. 477 (2023)................................................................................................ 21

*Bishop v. Smith,*
760 F.3d 1070 (10th Cir. 2014) ........................................................................ 14, 15

*Bond v. United States,*
572 U.S. 844 (2014)....................................................................................22, 26, 27

*Chevron USA Inc. v. Plaquemines Parish,*
146 S. Ct. 1052 (2026)............................................................................................ 17

*City and County of Denver v. State,*
No. 03-cv-3809, 2004 WL 5212983
(Colo. Dist. Ct. Nov. 5, 2004), *aff'd by equally divided court,*
139 P.3d 635, (Colo. 2006) ....................................................................................... 3

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983)................................................................................................... 8

*City of Los Angeles v. Patel,*
576 U.S. 409 (2015)................................................................................................ 19

*Dekovic v. Rubio*,
169 F.4th 1002 (10th Cir. 2026) ................................................................................ 28

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025) ................................................................................................... 13

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ..................................................................................................... 1

*Dubin v. United States*,
599 U.S. 110 (2023) ................................................................................................... 21

*FCC v. AT & T Inc.*,
562 U.S. 397 (2011) ................................................................................................... 17

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) .................................................................................. 24

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) ................................................................................................... 17

*Frey v. Town of Jackson*,
41 F.4th 1223 (10th Cir. 2022) ................................................................................. 30

*Frontier Airlines, Inc. v. Dep't of Homeland Sec.*,
173 F.4th 1158 (10th Cir. 2026) .............................................................................. 17

*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*,
146 S. Ct. 1546 (2026) ............................................................................................... 24

*Genova v. Banner Health*,
734 F.3d 1095 (10th Cir. 2013) .......................................................................... 27, 28

*Hernandez v. Baltazar*,
No. 1:25-cv-03094, 2025 WL 2996643
(D. Colo. Oct. 24, 2025) ............................................................................................. 25

*High Desert Relief, Inc. v. United States*,
917 F.3d 1170 (10th Cir. 2019) .................................................................................. 6

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
594 U.S. 382 (2021) ................................................................................................... 21

*Learning Res., Inc. v. Trump,*
607 U.S. 229 (2026).................................................................................................. 25

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024).................................................................................................. 25

*M.A.K. Inv. Grp., LLC v. City of Glendale,*
897 F.3d 1303 (10th Cir. 2018)................................................................................ 19

*Parker Drilling Mgmt. Servs., Ltd. v. Newton,*
587 U.S. 601 (2019).................................................................................................. 22

*Robertson v. City and County of Denver,*
874 P.2d 325 (Colo. 1994)....................................................................................... 3

*Rocky Mountain Gun Owners v. Town of Superior,*
No. 1:22-cv-02680, 2025 WL 2080108
(D. Colo. July 21, 2025) ........................................................................................... 15

*Sackett v. EPA,*
598 U.S. 651 (2023).................................................................................................. 27

*Santillan Quiroz v. Mullin,*
180 F.4th 1226 (10th Cir. 2026) ........................................................................ 25, 26

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016).................................................................................................. 13

*Springer v. Lujan Grisham,*
No. 23-2192, 2025 WL 2793787
(10th Cir. Oct. 1, 2025) ............................................................................................ 14

*Wyoming ex rel. Sullivan v. Lujan,*
969 F.2d 877 (10th Cir. 1992) .................................................................................. 16

*Tanzin v. Tanvir,*
592 U.S. 43 (2020).................................................................................................... 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
551 U.S. 308 (2007).................................................................................................. 6

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021)............................................................................................ 13, 14

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001) ............................................................................................. 20

*United States v. California,*
  No. 8:26-cv-01697, 2026 WL 2004372
  (C.D. Cal. July 9, 2026) ............................................................................6, 10, 11, 26

*United States v. City of Columbus,*
  No. 2:99-cv-01097, 2000 WL 1133166
  (S.D. Ohio Aug. 3, 2000) ..................................................................................... 7, 8

*United States v. City of Philadelphia,*
  644 F.2d 187 (3d Cir. 1980) ...................................................................................... 8

*United States v. Colorado,*
  No. 1:26-cv-01950-SKC-TPO (D. Colo.) ..................................................................... 15

*United States v. District of Columbia,*
  No. 1:25-cv-04458 (D.D.C.) ...................................................................................... 26

*United States v. Harrison,*
  153 F.4th 998 (10th Cir. 2025) ................................................................................. 19

*United States v. Hunt,*
  63 F.4th 1229 (10th Cir. 2023) ................................................................................... 6

*United States v. Johnson,*
  122 F. Supp. 3d 272 (M.D.N.C. 2015) ...................................................................... 30

*United States v. Lauderdale County,*
  914 F.3d 960 (5th Cir. 2019) ................................................................................ 5, 21

*United States v. Texas,*
  599 U.S. 670 (2023) ................................................................................................. 30

*United States v. Wolny,*
  133 F.3d 758 (10th Cir. 1998) .................................................................................... 6

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*
  529 U.S. 765 (2000) ................................................................................................. 27

*Watson v. Republican Nat'l Comm.,*
  146 S. Ct. 2165 (2026) ............................................................................................. 23

v

*We the Patriots, Inc. v. Lujan Grisham*,
   119 F.4th 1253 (10th Cir. 2024) ......................................................................... 14, 16

*West Virginia v. EPA*,
   597 U.S. 697 (2022)................................................................................................ 25

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ........................................................................................ 13

**Statutes**

31 U.S.C. § 6715 ........................................................................................................... 24

34 U.S.C. § 12601 .............................................................. 2, 5, 7, 18, 21, 22, 24, 28, 29

42 U.S.C. § 12101 *et seq.*............................................................................................. 23

42 U.S.C. § 2000e *et seq.*........................................................................................ 23, 24

42 U.S.C. § 3601 *et seq.*.............................................................................................. 23

Colo. Rev. Stat. § 18-12-116 ........................................................................................ 5

Colo. Rev. Stat. § 18-12-301 ............................................................................... 4, 5, 15

Colo. Rev. Stat. § 18-12-302 ................................................................................. 4, 15

Denver, Colo. Rev. Mun. Code § 38-121................................................................... 3, 4

Denver, Colo. Rev. Mun. Code § 38-116.................................................................... 4

Denver, Colo., Ord No. 21 (Jan. 22, 2007) ................................................................ 4

Denver, Colo., Ord No. 669 (Nov. 7, 1989)................................................................ 3

Denver, Colo., Ord. No. 1400-17 (Jan. 24, 2018)...................................................... 4

Pub. L. 103-322, 108 Stat. 1796 (1994) ............................................................. 5, 6, 21

**Rules**

Fed. R. Evid. 201(b)(2) ............................................................................................... 6

**Other Authorities**

Antonin Scalia, *A Matter of Interpretation: Federal Courts
and the Law* (1997) ................................................................................................ 17

Barbara E. Armacost, *Organizational Culture and Police
Misconduct*, 72 Geo. Wash. L. Rev. 453 (2004) .......................................................... 8

The American Heritage Dictionary of the English
Language (3d ed. 1992) ............................................................................................ 18

Debra A. Livingston, *Police Reform and the Department of Justice:
An Essay on Accountability*, 2 Buff. Crim. L. Rev. 817, (1999) ................................ 7

Merriam-Webster's Collegiate Dictionary
(10th ed. 1993)........................................................................................................ 18

H.R. Rep. No. 102-1085 (1992)...................................................................................... 6

H.R. Rep. No. 102-242, pt. 1 (1991).............................................................. 6, 7, 8, 9, 28

Black's Law Dictionary (12th ed. 2024) ...................................................................... 18

The Arena with America First Legal, *Reclaiming Civil Rights with Assistant
Attorney General Harmeet Dhillon* (YouTube, June 1,
2026), https://www.youtube.com/watch?v=wdzUq0g5MJY ...................................... 11

## INTRODUCTION

For almost four decades, Denver has protected its residents by prohibiting assault weapons and large-capacity magazines (LCMs) like those used to such devastating effect in the Columbine, Aurora theater, and Boulder King Soopers massacres. These measures promote public safety while respecting the Second Amendment right, which is "not a right to keep and carry any weapon whatsoever." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Indeed, six courts of appeals have concluded that the Second Amendment does not guarantee a right to assault weapons or LCMs. *See Barnett v. Raoul*, 180 F.4th 1035, 1046 & n.8 (7th Cir. 2026) (collecting cases from First, Second, en banc Fourth, en banc Ninth, and D.C. Circuits). Only one has disagreed. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, --- F.4th ----, 2026 WL 2075513 (3d Cir. July 17, 2026) (en banc), *stay of mandate granted* (Aug. 4, 2026). Nonetheless, the United States now attempts to make unprecedented use of its authority to challenge certain law enforcement officer conduct to claim that Denver's longstanding prohibitions violate the Second Amendment. That claim is incorrect. But the Court need not decide or even reach the constitutional questions because the federal government's suit also fails on three independent, threshold grounds.[1]

---

[1] On June 30, 2026, the Supreme Court granted certiorari in *Viramontes v. Cook County* (No. 25-238) and *Grant v. Higgins* (No. 25-566), in which it will consider "[w]hether the Second and Fourteenth Amendments guarantee the right to

*First*, the United States lacks standing as a matter of law because it has failed to demonstrate redressability. It alleges that Denver residents are being deprived of their right to possess assault weapons with magazines holding more than fifteen rounds, but it has not challenged a separate, overlapping state law that prohibits the same conduct. So, even if the United States succeeded on its claim, Denver residents would still be unable to possess what Denver's laws prohibit. In other words, a favorable judgment would not redress the injury the United States has identified. Under binding Tenth Circuit precedent, that separate, unchallenged legal obstacle alone defeats standing here.

*Second*, the United States's claim is not cognizable under the statute it claims authorizes this suit, 34 U.S.C. § 12601. Section 12601 allows the Attorney General to sue over a pattern or practice of law enforcement officer misconduct. The United States's attempt to use it to mount a facial attack on democratically enacted local laws as written is unprecedented and beyond Section 12601's text. That text is clear, and every traditional tool of statutory interpretation points toward reading it as every prior administration has done: It authorizes only challenges to patterns and practices of law enforcement officer misconduct. It does not authorize suits like this one, which claim simply that laws are unconstitutional as written.

---

possess AR-15 platform and similar semiautomatic rifles." Those pending cases have no impact on this Court's consideration of the jurisdictional, statutory, and pleading issues before it on this dispositive motion.

2

*Third*, even if Section 12601 authorized this suit, the United States has failed to plausibly allege enough facts to support it. Its burden is to allege a pattern or practice of conduct by law enforcement officers, rather than isolated or sporadic incidents. Yet the amended complaint does not identify even a single incident of allegedly unconstitutional conduct. Thus, the amended complaint fails on the additional ground that it does not contain the necessary factual support.

## BACKGROUND

### I.    Denver's Ordinance

Denver first restricted assault weapons and LCMs in 1989. *See* Denver, Colo., Ord No. 669 (Nov. 7, 1989). Both as originally enacted, *see id.* §1(a), and in its current form, *see* Denver, Colo. Rev. Mun. Code § 38-121(a), the first section of Denver's ordinance set out the City Council's legislative findings. The Council concluded that "the use of assault weapons poses a threat to the health, safety, and security of all citizens of the City and County of Denver," emphasizing that such weapons, with their "rapid rate of fire" and the "capacity to fire an inordinately large number of rounds without reloading," were "designed primarily for military or antipersonnel use" and were increasingly used in crime. *Id.* Denver's ordinance has been upheld against multiple challenges in state court. *See Robertson v. City and County of Denver*, 874 P.2d 325, 332-33 (Colo. 1994) (rejecting challenge under state constitution right-to-bear-arms provision and observing that assault weapons "pose a substantial threat to the health and safety of the citizens of Denver"); *City and*

3

*County of Denver v. State*, No. 03-cv-3809, 2004 WL 5212983 (Colo. Dist. Ct. Nov. 5, 2004) (rejecting preemption challenge and highlighting Denver's interest in protecting its residents), *aff'd by equally divided court*, 139 P.3d 635, 636 (Colo. 2006).

Since its original enactment, Denver has amended the ordinance to update the definition of prohibited assault weapons and bring the law's coverage in line with Colorado's state prohibition on LCMs. *See, e.g.*, Denver, Colo., Ord No. 21 (Jan. 22, 2007); Denver, Colo., Ord. No. 1400-17 (Jan. 24, 2018). Today, Denver's ordinance generally prohibits manufacturing, selling, or possessing assault weapons, defined to include:

> a. Any semiautomatic pistol or centerfire rifle, either of which have a fixed or detachable magazine with a capacity of more than fifteen (15) rounds.
> …
> c. Any part or combination of parts designed or intended to convert a firearm into a weapon identified in paragraph[] a … of this subsection (1), if those parts are in the possession or under the control of the same person.
> ….

Denver, Colo. Rev. Mun. Code §§ 38-116(1) (definition), 38-121(c) (prohibition). Denver's law thus ties the definition of prohibited semiautomatic centerfire rifles to LCMs capable of holding more than fifteen rounds. It also separately prohibits those LCMs. *See id.* § 38-121(g) (together with §§ 38-116(1), 38-116(11), and 38-121(c), the "Ordinance"). Denver's LCM prohibition aligns with a state-law prohibition on the same types of magazines, *see* Colo. Rev. Stat. §§ 18-12-302(1)(a), 18-12-301(2)(a),

4

which the Denver Police Department is authorized to enforce, *see id.* §§ 16-2.5-101,

16-2.5-102, 16-2.5-105.[2]

## II.    Section 12601

The United States has sued under 34 U.S.C. § 12601 (originally codified at 42

U.S.C. § 14141). Enacted as part of the Violent Crime Control and Law

Enforcement Act of 1994 (the "1994 Crime Bill"), it appears under the "Police

Pattern or Practice" subsection of the Act's "State and Local Law Enforcement"

provision. Pub. L. 103-322, tit. XXI, subtit. D, § 210401, 108 Stat. 1796, 2071 (1994).

It reads:

> (a) Unlawful conduct
> It shall be unlawful for any governmental authority, or any agent
> thereof, or any person acting on behalf of a governmental authority, to
> engage in a pattern or practice of conduct by law enforcement officers
> or by officials or employees of any governmental agency with
> responsibility for the administration of juvenile justice or the
> incarceration of juveniles that deprives persons of rights, privileges, or
> immunities secured or protected by the Constitution or laws of the
> United States.
>
> (b) Civil action by Attorney General
> Whenever the Attorney General has reasonable cause to believe that a
> violation of paragraph (1)[3] has occurred, the Attorney General, for or
> in the name of the United States, may in a civil action obtain

---

[2] Starting August 1, 2026, state law also requires most Colorado residents to complete firearm safety training and obtain a license before purchasing a "specified semiautomatic firearm," Colo. Rev. Stat. § 18-12-116, defined to include a "semiautomatic rifle … with a detachable magazine," *id.* § 18-12-116(1)(d).

[3] The reference to "paragraph (1)" is a scrivener's error, which should be read as "paragraph (a)." *United States v. Lauderdale County*, 914 F.3d 960, 962 n.2 (5th Cir. 2019).

5

appropriate equitable and declaratory relief to eliminate the pattern or practice.

Section 12601 was enacted to address longstanding concerns about police practices, but its immediate inciting event was the 1991 beating of Rodney King by Los Angeles police. *See United States v. California*, No. 8:26-cv-01697, 2026 WL 2004372, at *4 (C.D. Cal. July 9, 2026); Ex. 1, U.S. Dep't of Just., *Taking Stock: Report from the 2010 Roundtable on the State and Local Law Enforcement Police Pattern or Practice Program (42 USC § 14141)* 1-2 (Sept. 2011) ("Roundtable Report"), https://www.ojp.gov/pdffiles1/nij/234458.pdf.[4] The brutal incident and subsequent national outrage led to a series of congressional hearings on police misconduct and the introduction of the Police Accountability Act of 1991. *See* H.R. Rep. No. 102-242, pt. 1, at 135-39 (1991); H.R. Rep. No. 102-1085, at 63, 65 (1992). That act did not ultimately become law, but a modified version was incorporated into the 1994 Crime Bill and eventually codified as Section 12601. *See* Pub. L. No. 103-322, tit. XII, 108 Stat. at 2071. The 1994 version was substantively identical to its predecessor, except that it omitted a private cause of action and expanded the

---

[4] The Court may take judicial notice of government records. *See High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 n.1 (10th Cir. 2019); Fed. R. Evid. 201(b)(2). It may also consider "legislative facts"—*e.g.*, those with "relevance to ... the lawmaking process," *United States v. Wolny*, 133 F.3d 758, 764 (10th Cir. 1998)—without the need for judicial notice, *see United States v. Hunt*, 63 F.4th 1229, 1250-51 (10th Cir. 2023). And it may properly do so here without converting this motion into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (explaining that "matters of which a court may take judicial notice" are properly considered on a Rule 12(b)(6) motion to dismiss).

6

provision to include conduct by "officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles." *Compare* 34 U.S.C. § 12601, *with* H.R. Rep. No. 102-242, pt. 1, at 24.

Legislative material for the Police Accountability Act provides the relevant background for the 1994 Crime Bill, because the latter lacks a direct legislative record. *See, e.g.*, *United States v. City of Columbus*, No. 2:99-cv-01097, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000); Debra A. Livingston, *Police Reform and the Department of Justice: An Essay on Accountability*, 2 Buff. Crim. L. Rev. 817, 818 n.5 (1999). The committee report described the horrific beating of Rodney King by members of the Los Angeles Police Department, described a "culture" of "excessive force against the public" in which "officers who choose to be brutal and abusive are left to do so without fear of interference," and pointed to similar incidents in other cities resulting in "a significant problem" of excessive force across the country. H.R. Rep. No. 102-242, pt. 1, at 135. The report also described other "pattern[s]" of "police brutality" and "police misconduct," including unconstitutional stops and searches of minorities. *Id.* at 136.

The committee determined that the Department of Justice's lack of "authority to address systemic patterns or practices of police misconduct" created a "serious and outdated gap in the federal scheme for protecting constitutional rights." *Id.* at 137. It explained that the federal government's "criminal authority to prosecute police brutality is not adequate to address patterns or practices such as

7

the lack of training or the routine use of deadly techniques like chokeholds, or the absence of a monitoring and disciplinary system." *Id.* at 138. And it pointed to a decision from the Third Circuit holding that the federal government lacked statutory or constitutional authority to sue to enjoin violations of citizens' constitutional rights by police officers. *See id.* at 137; *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980).

This "problem was compounded," *City of Columbus*, 2000 WL 1133166, at *8, by the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). There, the Court held that individuals could not seek injunctive relief to address systemic patterns of police abuse "absent a showing of likely future harm," which an individual was unlikely to be able to make. H.R. Rep. No. 102-242, pt. 1, at 137. The result was a complete inability to enjoin abusive police practices: "Private parties [we]re foreclosed by the standing limitations … in *Lyons*," while *City of Philadelphia* meant that the federal government lacked "statutory or constitutional authority to bring" a suit. Barbara E. Armacost, *Organizational Culture and Police Misconduct*, 72 Geo. Wash. L. Rev. 453, 528 (2004). The committee stated that it sought to "close this gap in the law, [by] authorizing the Attorney General … to sue for injunctive relief against abusive police practices." H.R. Rep. No. 102-242, pt. 1, at 138.

In explaining this new authority, the committee acknowledged that "[h]istorically, day-to-day responsibility for operation of the Nation's criminal justice

8

system has rested with those units of government that are closest to the people." *Id.*

at 88. It thus gave assurance that the law would reflect its duty to "respect and

promote the fundamental role of the states and local governments" in that area. *Id.*

Consistent with our federalist structure, the law would simply "provide[] another

tool" to address police misconduct. *Id.* at 138.

## III.    The Department of Justice's Use of Section 12601

After Section 12601's enactment, the Department of Justice established, and

until recently has followed, standard procedures for addressing police misconduct.

*See* Ex. 2, Civ. Rts. Div., U.S. Dep't of Just., *The Civil Rights Division's Pattern and

Practice Police Reform Work: 1994–Present* (2017) ("2017 DOJ Report").[5] The Special

Litigation Section in the Civil Rights Division first conducts a preliminary inquiry

into policing practices. *Id.* at 5. If it uncovers evidence of police misconduct, it

considers many factors in weighing whether and how to proceed, "including actions

by private litigants." *Id.* at 7-8. Where action under Section 12601 is deemed

appropriate, the Division launches a formal investigation. *Id.* at 8. The

investigation usually involves a comprehensive analysis of the law enforcement

agency in a particular community, including of the agency's written policies,

training procedures, data collection, and actual police practice on the ground. *Id.* at

9-12.

---

[5] https://www.govinfo.gov/content/pkg/GOVPUB-J-PURL-gpo77339/pdf/GOVPUB-J-PURL-gpo77339.pdf.

If the Division finds reasonable cause to believe that a pattern or practice of police misconduct exists, it notifies the jurisdiction with detailed findings. *Id.* at 15-16. It then "negotiates reform agreements resolving those findings," which "are geared toward changing policies, practices, and culture across a law enforcement agency." *Id.* at 1, 20. Only if "an agreement cannot be negotiated" does "the Division … bring a lawsuit to compel needed reforms." *Id.* at 1-2, 18.

As the report explains (and as another court recently recognized, *see California*, 2026 WL 2004372, at *4), these cases have historically "focus[ed] on systemic police misconduct," including "patterns of unlawful use of force; unlawful stops, searches and arrests; and racial discrimination." 2017 DOJ Report at 1, 3, 6. The goal is "to achieve organizational change within police departments where institutional failures have caused systemic police misconduct." *Id.* at 20. The report's compendium of pattern or practice cases brought between 1994 to 2017 confirms that Department of Justice has consistently used Section 12601 only to challenge patterns of misconduct by law enforcement. *Id.* at 41-48; *see also* Roundtable Report at 19-20 (listing settlements and investigations as of July 2010).

Late last year, however, the Division's newly created "Second Amendment Section" started using Section 12601 in a manner that the Division's head calls "revolutionary" and that has "never been done before": to challenge state and

10

localities' laws as unconstitutional under the Second Amendment.[6] Only one court has ruled in one of these cases to date, and it rejected the Department's request for a TRO, saying that "the use of Section 12601 to facially challenge a state criminal law is, at the very least, a novel approach that deviates from the way the statute has historically been enforced." *California*, 2026 WL 2004372, at *4.

## IV.    This Case

The United States initiated this action on May 5, 2026. *See* Compl., Dkt. 1. On July 27, 2026, it filed the operative amended complaint, alleging a single claim under Section 12601 that the Ordinance violates the Second Amendment by prohibiting "AR-15 style rifles with standard capacity magazines" and the magazines themselves. First Am. Compl., Dkt. 31 ("FAC") ¶¶ 7-8; *see id.* ¶¶ 22-23, 40, 52.[7] The amended complaint does not define either "AR-15 style rifles" or "standard capacity magazines." It challenges Denver's restrictions on magazines that hold more than 15 rounds (hereafter, "16-plus magazines") and certain

---

[6] *See* The Arena with America First Legal, *Reclaiming Civil Rights with Assistant Attorney General Harmeet Dhillon*, at 28:47-29:15, 33:30-33:34 (YouTube, June 1, 2026), https://www.youtube.com/watch?v=wdzUq0g5MJY.

[7] The Department of Justice preceded this lawsuit with a letter on April 28, stating that it would consider deferring this action only if Denver agreed to—"at a minimum"—concede the law's unconstitutionality and enter into a "court-enforceable consent decree permanently enjoining" Denver from enforcing its prohibition "or any similar such bans." Ex. 3. Denver responded on May 4, 2026, Ex. 4, and the United States filed suit the next day.

semiautomatic centerfire rifles with 16-plus magazines, though its prayer for relief seeks an injunction only as to the latter. *See id.* at 14 (prayer for relief).

The amended complaint summarily alleges that Denver law enforcement officers generally "enforce the criminal laws of the City," FAC ¶ 51, and have "routinely enforced [the Ordinance] for many years and will continue to do so in the future," *id.* ¶ 46. It contains no further detail about this enforcement, such as particular instances of enforcement against specific individuals. It asserts only that, because the Ordinance itself is allegedly unconstitutional, any routine enforcement of it would constitute "a pattern or practice of conduct by law enforcement officers" that deprives individuals of Second Amendment rights. *Id.* ¶¶ 51-52, 57.

The amended complaint seeks declaratory and injunctive relief, requesting the Court to enjoin Denver from enforcing the Ordinance "to the extent it bans the possession of AR-15 style rifles with standard capacity magazines." *Id.* at 14 (prayer for relief). It does not challenge Colorado's state-law LCM prohibition.

Denver now moves to dismiss the amended complaint because the United States has failed to demonstrate standing and has failed to state a claim under Section 12601.

## LEGAL STANDARD

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction. And to survive a 12(b)(6) motion to dismiss, a plaintiff must state a plausible claim for relief on the face of a well-

12

pleaded complaint." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023).

## ARGUMENT

### I.    The United States Lacks Standing

The United States has not demonstrated that the injury it alleges here—*i.e.*, a purported "pattern or practice of conduct" by Denver police officers "that deprives law-abiding individuals" of the ability to possess certain assault weapons with 16-plus magazines, FAC at 14; *id.* ¶¶ 7-8, 52—is redressable by a favorable judgment of this Court and has therefore failed to establish Article III standing. Its complaint should be dismissed for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. One of those limits is that "the plaintiff must have standing to sue." *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 110 (2025). Standing doctrine ensures that "[f]ederal courts do not possess a roving commission to publicly opine on every legal question" or to "exercise general legal oversight" of other branches of government. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021).

To establish standing at the pleading stage, the plaintiff must "clearly … allege facts demonstrating" injury in fact, causation, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). The third element—

13

redressability—requires the plaintiff to demonstrate "that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423. A plaintiff fails to establish redressability when "an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision." *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014).

The Tenth Circuit recently applied this principle in a Second Amendment case, *We the Patriots, Inc. v. Lujan Grisham*, 119 F.4th 1253, 1259 (10th Cir. 2024), and dismissed the appeal on standing grounds. The plaintiffs there challenged a New Mexico state public health order restricting guns in Albuquerque-area playgrounds. *See id.* at 1255. The Tenth Circuit held that the plaintiffs' alleged injury—the inability to possess firearms in playgrounds—was not redressable "due to several unchallenged City and County restrictions" that separately prohibited firearm possession in the same playgrounds. *Id.* at 1259. Even if the plaintiffs succeeded in enjoining the public health order, they still "could not legally carry [a] firearm on playgrounds because of the municipal and county ordinances" and thus failed to show "that a favorable decision by [the] court would likely redress their alleged injury." *Id.* at 1260-61; *see id.* at 1261 ("[W]e are unable to redress injuries caused by the independent actions of third parties … that are not before us."); *see also Springer v. Lujan Grisham*, No. 23-2192, 2025 WL 2793787, at *3-4, *6-9 (10th Cir. Oct. 1, 2025) (applying *We the Patriots* to dismiss similar challenge).

14

Another court in this district also has dismissed Second Amendment challenges to LCM restrictions under this same principle. In *Rocky Mountain Gun Owners v. Town of Superior*, No. 1:22-cv-02680, 2025 WL 2080108 (D. Colo. July 21, 2025), the court dismissed claims against two local LCM ordinances "because the LCMs [plaintiffs] wish to continue to possess are otherwise prohibited under a pre-existing Colorado state law and [plaintiffs] have not challenged [that] law." *Id.* at *7-8.

The challenge here suffers from this same flaw. The United States "brings this action to vindicate the rights of Denver citizens" under the Second Amendment, FAC ¶ 7; *see id.* ¶¶ 8, 57, and has asked this Court to enjoin enforcement of the Ordinance "to the extent it bans the possession of AR-15 style rifles" with 16-plus magazines, *id.* at 14. But even if this Court ruled in favor of the United States and enjoined enforcement of the Ordinance, people in Denver would still be prohibited from possessing centerfire rifles with 16-plus magazines. Colorado state law "separately and distinctly" prohibits possession of 16-plus magazines. *Bishop*, 760 F.3d at 1078; *see* Colo. Rev. Stat. §§ 18-12-302(1)(a), 18-12-301(2)(a)(I). The United States has not challenged that state-law provision in this lawsuit, and so enjoining the Ordinance cannot remedy the injury it asserts.[8] Because a favorable judgment

---

[8] The fact that the United States has sued Colorado and sought to enjoin Colorado's enforcement of the state LCM law in a separate case, *see United States v. Colorado*, No. 1:26-cv-01950-SKC-TPO (D. Colo.), does not eliminate the jurisdictional flaw here. In *this* case, the United States has sued neither Colorado

15

by this Court would not provide "meaningful relief," *see We the Patriots*, 119 F.4th at 1260, the United States lacks standing and its amended complaint should be dismissed for lack of jurisdiction.

## II.    The United States's Challenge is Not Cognizable Under Section 12601

Even if the United States had standing, its claim is not cognizable under Section 12601. That statute creates a targeted cause of action to fill a gap in civil rights remedies, allowing the Attorney General to sue over a pattern or practice of violations caused specifically by the conduct of law enforcement officers. Here, there is no gap, nor is there a pattern or practice within the meaning of the statute. Section 12601 applies only when people's rights are violated by the manner in which law enforcement officers carry out their duties. It does not authorize what the United States attempts here: a facial challenge alleging a violation arising from how a law is written. This unprecedented attempt to transform a police misconduct statute into a roving power to challenge any state or local law the United States disfavors is contrary to Section 12601's text, ignores its context, and conflicts with background principles of statutory construction.

---

nor Denver over their enforcement of the state law, and so it cannot show that a favorable decision here would provide meaningful relief. *See, e.g., Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992) (analyzing whether injury would be redressable by a favorable decision "in this case").

A.    **The text of Section 12601 authorizes a cause of action targeting law enforcement officer misconduct, not facial challenges to state and local laws**

Statutory interpretation begins with "a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019). Discerning ordinary meaning "is not merely an exercise in ascertaining the outer limits of a word's definitional possibilities." *FCC v. AT & T Inc.*, 562 U.S. 397, 407 (2011) (cleaned up). Instead, it asks how an ordinary English speaker would understand the text. *See, e.g.*, *id.* at 403; *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1060-61 (2026) (rejecting overbroad, "literalist" reading of statutory phrase in favor of how "[o]rdinary readers would … understand" the text).

Critical to understanding the ordinary meaning of statutory text is appreciating its context. "To interpret a statute's plain language," courts must "consider[] both the specific context in which the word is used and the broader context of the statute as a whole." *Frontier Airlines, Inc. v. Dep't of Homeland Sec.*, 173 F.4th 1158, 1166 (10th Cir. 2026) (citation omitted); *see* Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 37 (1997) ("In textual interpretation, context is everything[.]").

Section 12601 targets violations arising from law enforcement officer misconduct. It makes it unlawful to "engage in a pattern or practice of conduct by law enforcement officers … that deprives persons" of federal rights. 34 U.S.C.

17

§ 12601(a).[9] Several textual features make clear that what the statute authorizes is a cause of action to challenge *how* officers perform their duties, not a challenge, as the United States alleges here, to the Ordinance as written.

To start, the verb phrase "engage in" suggests active conduct by officials, rather than the background status quo of a legal prohibition. *See, e.g.*, *Engage*, Merriam-Webster's Collegiate Dictionary (10th ed. 1993) ("to begin and carry on an enterprise or activity"). The terms that follow emphasize the manner in which government duties are carried out. A "pattern" is typically a "mode of behavior or series of acts that are recognizably consistent." *Pattern*, Black's Law Dictionary (12th ed. 2024); *see Pattern*, The American Heritage Dictionary of the English Language (3d ed. 1992) (referring by example to "one's pattern of behavior"). Similarly, a "practice" is a "habitual or customary action or *way of doing something*." *Practice*, The American Heritage Dictionary of the English Language (3d ed. 1992) (emphasis added). Finally, "conduct" refers to "[t]he way a person acts." *Conduct*, The American Heritage Dictionary of the English Language (3d ed. 1992) (same).

---

[9] Section 12601 also applies to other enforcement actors: "officials or employees of any governmental agency with responsibility for the administration of juvenile justice or of the incarceration of juveniles." *Id.* But the amended complaint challenges only allegedly unlawful conduct by "law enforcement officers," specifically Denver police officers. *See* FAC ¶¶ 42, 51-52; *id.* at 13.

Most importantly, the unlawful conduct is specifically "conduct by law enforcement officers." The statute does not cover any and all unlawful conduct, but only that carried out by law enforcement officers. And, reading on, it is such law enforcement officer conduct "that deprives" persons of their rights. The subject of the verb "deprives" is the relative pronoun "that," which refers back to the phrase "conduct by law enforcement officers." So, in this sentence, law enforcement officer conduct is specifically what is depriving individuals of their rights. Putting this all together and reading the provision as a whole, Section 12601 creates a cause of action for when people's rights are violated by the manner in which law enforcement officers are repeatedly conducting their duties. Some classic, non-exhaustive examples of such violations are the excessive use of force, discriminatory arrests, and unlawful searches and seizures. *See, e.g.*, 2017 DOJ Report at 3, 6. In those situations, an ordinary English speaker would understand "conduct by law enforcement officers" to be what is "depriv[ing] persons" of their rights.

By contrast, no one would ordinarily describe a facial challenge to a law as a challenge to law enforcement officer conduct. That is more naturally described as "an attack on a statute itself." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015) (describing facial challenge). Such claims allege violations in how a law is written, rather than any violation arising specifically from how officers enforce it. *See, e.g.*, *United States v. Harrison*, 153 F.4th 998, 1007 (10th Cir. 2025) ("A facial challenge is a head-on attack of a legislative judgment[.]" (cleaned up)); *M.A.K. Inv. Grp., LLC*

19

*v. City of Glendale*, 897 F.3d 1303, 1306 n.1 (10th Cir. 2018) (explaining that a facial challenge "asserts that the terms of the statute itself violate the Constitution" (citation omitted)).

These kinds of claims are a poor fit for the language of Section 12601. Indeed, they violate the "cardinal principle of statutory construction" that a statute should be read so that "no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *see, e.g.*, *Aleman Hernandez v. Baltazar*, No. 1:25-cv-03688, 2025 WL 3718159, at *4 (D. Colo. Dec. 23, 2025) (applying this rule). Specifically, if Section 12601 were read to authorize claims that a statute violates the Constitution as written, based merely on the presumption that officers generally enforce all laws, then key language in the statute would be superfluous. The statute could simply say:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice ~~of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles~~ that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

Any interpretation that effectively deletes so much text cannot be correct. Congress deliberately chose to create a cause of action for specific kinds of violations by explicitly referring to those caused by "conduct by law enforcement officers." Those words are not superfluous; they do real work in defining the cause of action's scope.

Case No. 1:26-cv-01929-SKC-TPO   Document 33   filed 08/10/26   USDC Colorado
pg 29 of 41

The text surrounding Section 12601 confirms this straightforward interpretation. Statutory headings and surrounding provisions are important sources of contextual meaning. *See, e.g.*, *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) (explaining importance of statutory titles and section headings, especially when they "reinforce[] what the text's nouns and verbs independently suggest" (citation omitted)); *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 389 (2021) (considering "neighboring provisions" as part of textual analysis); *see also Lauderdale County*, 914 F.3d at 965-66 (relying on section titles in interpreting Section 12601). Section 12601 was codified as part of the "Violent Crime Control and Law Enforcement Act of 1994," under the title "State and Local Law Enforcement," and the subtitle "Police Pattern or Practice." *See* Pub. L. No. 103-322, tit. XXI, subtit. D, § 210401, 108 Stat. at 2071. The neighboring provision in the act, titled "Data on use of excessive force," explicitly concerns "excessive force by law enforcement officers." *See id.* § 210402; 34 U.S.C. § 12602(a). Together, this surrounding text confirms Section 12601's focus on violations arising specifically from law enforcement officer conduct, rather than violations that inhere in the letter of a law. This would be a strange place indeed for Congress to bury an all-purpose power to challenge state and local legislative acts.

**B.  Additional context confirms Section 12601's targeted focus**

"Context is not found exclusively within the four corners of a statute." *Biden v. Nebraska*, 600 U.S. 477, 511 (2023) (Barrett, J., concurring) (citation omitted). It

21

also includes the "legal 'backdrop against which Congress'" acted, *Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citation omitted), the history of related statutes, past enforcement practice, and the "principles of federalism inherent in our constitutional structure," *Bond v. United States*, 572 U.S. 844, 856 (2014). Each of these pieces of contextual evidence further confirms that Section 12601 applies only to target law enforcement officer misconduct, not to enable facial challenges to state and local laws as written.

### 1.    Civil rights remedies before Section 12601

"Congress legislates against the backdrop of existing law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 587 U.S. 601, 611 (2019) (citation omitted). Here, the legal backdrop of Section 12601 illustrates that it was specifically crafted to target a gap in civil rights law.

As explained above, the decisions in *Lyons* and *City of Philadelphia* rendered existing remedies inadequate to tackle police misconduct at the institutional level. *See supra* pp. 7-8. Section 12601 fills that gap. It creates just the kind of cause of action found lacking in *City of Philadelphia*, for the federal government to sue over "a pattern or practice of conduct by law enforcement officers." 34 U.S.C. § 12601(a). And it authorizes claims for injunctive relief against police *conduct* that individual litigants struggle to bring under *Lyons*, as opposed to challenges to unconstitutional *statutes* that are more easily brought under 42 U.S.C. § 1983. Section 12601 thus complements Section 1983 without redundancy. Each provides an avenue for

injunctive relief where the other does not. In this way, understanding Section 12601

in the larger context of civil rights law reinforces its focus on violations caused by

the manner of law enforcement officer conduct.

Recent events confirm that the United States's theory of Section 12601

reaches not only outside what the statute permits, but into areas where it is not

needed. On June 30, three individuals and two gun-rights organizations filed a

complaint against the City and County of Denver and others under Section 1983,

alleging that the Ordinance and other laws violate the Second Amendment and

seeking injunctive relief. *See* Compl., *Elliott v. City and County of Denver*, No. 1:26-

cv-02948 (D. Colo.), Dkt. 1; *see also id.*, Dkt. 1-2 (noticing *Elliott* as related to this

case). *Elliott* demonstrates that the United States's complaint seeks to tread the

path available to private litigants, when the clear textual and contextual evidence

shows that Section 12601 instead addresses a gap in federal civil rights law.

### 2. Other "pattern or practice" statutes

The additional context of other "pattern or practice" statutes further

underscores the targeted scope of Section 12601. *See Watson v. Republican Nat'l*

*Comm.*, 146 S. Ct. 2165, 2173 (2026) (considering "related statute" as part of context

informing statute's meaning). Prior to enacting Section 12601 in 1994, Congress

had passed numerous statutes with "pattern or practice" provisions, including

provisions of Title VII (42 U.S.C. § 2000e *et seq.*), the Americans with Disabilities

Act (42 U.S.C. § 12101 *et seq.*), and the Fair Housing Act (42 U.S.C. § 3601 *et seq.*).

These statutes each authorize the Attorney General to sue "*any person or group of persons …* engaged in a pattern or practice of resistance to the full enjoyment of any of the [specified] rights," 42 U.S.C §§ 2000e-6(a), 3614(a) (emphasis added), or "*any person or group of persons* [who] is engaged in a pattern or practice of discrimination," *id.* § 12188(b)(1)(B)(i) (emphasis added).

By contrast, the language of Section 12601 is far more particular. As relevant here, it covers only "a pattern or practice *of conduct by law enforcement officers.*" 34 U.S.C. § 12601(a) (emphasis added). Congress deliberately chose to limit Section 12601 to violations caused by conduct of a specific type of actor—a marked departure from prior "pattern or practice" statutes. In fact, the focused language of Section 12601 stands in contrast to another pattern-or-practice provision included in the very same 1994 Crime Bill. *See* 31 U.S.C. § 6715 (authorizing suit against any "unit of general local government" for engaging in certain patterns or practices). In other words, when Congress wished to provide a remedy for rights violations by a broader set of actors, "it knew how to do so." *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 146 S. Ct. 1546, 1555 (2026) (citation omitted); *see also, e.g.*, *Fish v. Kobach*, 840 F.3d 710, 740 (10th Cir. 2016) ("When Congress knows how to achieve a specific statutory effect, its failure to do so evinces an intent *not* to do so.").

24

### 3.    Past enforcement practice

"A statute's broader context includes the longstanding practice of the government." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1236 (10th Cir. 2026) (cleaned up). The United States has used Section 12601 for more than three decades to challenge patterns of systemic police misconduct, not as a vehicle to bring facial challenges to state and local laws. That "(until recently) unbroken interpretation and practice," *id.*, reinforces the proper interpretation of Section 12601.

The Supreme Court has made clear that "the 'longstanding practice of the government' … 'can inform a court's determination of what the law is.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (cleaned up). And "just as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred." *West Virginia v. EPA*, 597 U.S. 697, 725 (2022) (citation omitted); *see Learning Res., Inc. v. Trump*, 607 U.S. 229, 250 (2026) ("[T]he fact that no President has ever found such power in IEEPA is strong evidence that it does not exist."). The Tenth Circuit recently invoked this principle to reject the federal government's interpretation of a statute at odds with its prior interpretation and practice "of nearly thirty years." *Santillan Quiroz*, 180 F.4th at 1236.

The same principle supports rejecting the United States's "novel … interpretation" of Section 12601. *Hernandez v. Baltazar*, No. 1:25-cv-03094, 2025

WL 2996643, at *7 (D. Colo. Oct. 24, 2025) (declining to adopt federal government's "novel new interpretation of decades-old law" that conflicted with past enforcement practice); *see Santillan Quiroz*, 180 F.4th at 1237 ("We therefore approach the Government's novel, contrary position with a healthy dose of skepticism."). As explained—and as the Assistant Attorney General in charge of the Civil Rights Division has acknowledged—interpreting Section 12601 to authorize facial challenges to state and local criminal laws is a "revolutionary" view of the statute that would allow it to be used in a manner that, before late last year, has "never been done before." *See supra* pp. 9-11 & note 6.[10] This absence of any historical precedent supporting such an interpretation of Section 12601 is further "strong evidence" that the sweeping power "does not exist." *Santillan Quiroz*, 180 F.4th at 1236 (quoting *Learning Res.*, 607 U.S. at 250); *see California*, 2026 WL 2004372, at *4 (finding lack of "any historical precedent for utilizing Section 12601" to bring claims like those the United States alleges in this case).

### 4.    Federalism principles

Finally, Section 12601, like all federal statutes, "must be read consistent with principles of federalism inherent in our constitutional structure." *Bond*, 572 U.S. at 856; *see id.* at 856-59. To that end, "if Congress intends to alter the usual

---

[10] The United States began invoking Section 12601 to challenge laws as facially violating the Second Amendment in December 2025. *See United States v. District of Columbia*, No. 1:25-cv-04458 (D.D.C.).

constitutional balance between States and the Federal Government, it must make its intentions to do so *unmistakably clear* in the language of the statute." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000) (emphasis added) (citation omitted); *see also, e.g.*, *Sackett v. EPA*, 598 U.S. 651, 679 (2023) (explaining that Congress must "enact *exceedingly clear* language if it wishes to significantly alter" the federal-state balance (emphasis added) (citation omitted)). This "well-established principle," *Bond*, 572 U.S. at 858, also strongly supports rejecting the United States's expansive interpretation of Section 12601.

Under that interpretation, the United States would arrogate to itself the power to challenge any state or local criminal law, as all are subject to police officer enforcement. *See, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (noting that police officers can arrest individuals for "even a very minor criminal offense"); FAC ¶ 42 (alleging that Denver police officers are authorized "to apprehend any and all persons in the act of committing any offense against the laws of the State of Colorado or the City's ordinances"). The federal government would effectively superintend all state and local legislatures. If Congress had intended to upend our federalist structure and grant such sweeping power to the federal government, it needed to "convey[] its purpose clearly." *Genova v. Banner Health*, 734 F.3d 1095, 1100 (10th Cir. 2013) (Gorsuch, J.) (citation omitted).

But nothing in Section 12601's text indicates such a seismic shift in the federal-state balance—let alone through "unmistakably clear" language. On the

27

contrary, the text specifically homes in on unlawful "conduct by law enforcement officers," rather than any problems arising from the terms of state or local laws themselves. 34 U.S.C. § 12601(a). In short, Congress sought to address a "discrete and carefully chosen target[], not," as the United States would have it, "to loose a federal blunderbuss," *Genova*, 734 F.3d at 1100-01, that grants the federal executive roving power to challenge any state or local criminal law it opposes.

## C.     Legislative history reinforces the meaning of Section 12601

Section 12601's text is unambiguous, and its context confirms its meaning. Accordingly, there is no need to consider legislative history. But even if there were ambiguity in the text that rendered legislative history relevant, *see, e.g.*, *Dekovic v. Rubio*, 169 F.4th 1002, 1014 (10th Cir. 2026), the result would not change. The legislative record overwhelmingly confirms that Section 12601 authorizes a targeted cause of action to address police officer misconduct, not a free-floating power to bring facial challenges to state and local laws. As explained, the House committee report for the Police Accountability Act makes clear that Congress was concerned with remedying systemic police misconduct. *See supra* pp. 6-9. It indicated that Section 12601 was designed to "close [a] gap in the law, authorizing the Attorney General … to sue for injunctive relief against abusive police practices." H.R. Rep. No. 102-242, pt. 1, at 138. In other words, legislative history simply confirms what the ordinary meaning of the text, in context, already conveys.

*        *        *

28

Section 12601 does not authorize this suit. The United States's complaint is with the ordinance Denver enacted, not with "conduct by [its] law enforcement officers." 34 U.S.C. § 12601(a). The United States alleges that Denver violated the Second Amendment "[w]hen the City banned" assault weapons and LCMs, and claims that the Ordinance "violates the Second Amendment," FAC ¶¶ 7-8; *see id.* ¶¶ 22-23, 37, 40, 52. On the United States's theory, it is the terms of the Ordinance itself, not the manner in which officers have enforced it, that is depriving individuals of a constitutional right. Because the United States does not challenge a "pattern or practice of conduct by law enforcement officers … that deprives persons" of a federal right, 34 U.S.C. § 12601(a), its claim is not cognizable under Section 12601, and the amended complaint should be dismissed with prejudice.

## III.    The Amended Complaint Fails to Allege a Pattern or Practice of Conduct by Law Enforcement Officers

Even if the United States's claim were cognizable under Section 12601, it fails to plead any facts showing the supposed "pattern or practice of conduct by law enforcement officers." The amended complaint does not contain even a single allegation of actual enforcement of the Ordinance, let alone of Denver police engaging in a pattern or practice of such conduct. The United States instead relies entirely on the general proposition that Denver police officers are charged with enforcing Denver law, *see* FAC ¶¶ 42-45, 51, and its conclusory assertion, with no factual support, that Denver police "have, in fact, routinely enforced [the Ordinance]

29

for many years and will continue to do so in the future unless enjoined," *id.* ¶ 46; *see id.* ¶ 51. That is not sufficient to state a claim under Section 12601.

A plaintiff "must plead concrete facts" to survive a motion to dismiss. *Frey v. Town of Jackson*, 41 F.4th 1223, 1243 (10th Cir. 2022). Here, that means facts showing not "the mere occurrence of isolated … or sporadic … acts," but a pattern or practice of conduct by Denver police officers. *United States v. Johnson*, 122 F. Supp. 3d 272, 353 (M.D.N.C. 2015) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)); *see id.* at 353-54. The amended complaint falls well short.

Nor can the Court reasonably infer a "pattern or practice of conduct by law enforcement officials" merely from the existence of the Ordinance and the authority of Denver police officers to enforce it. The decision of whether and in what circumstances to arrest individuals for violating a criminal law involves more considerations than whether the officer has probable cause to believe a crime was committed. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 680 (2023) (explaining that "the Executive Branch must balance many factors when devising arrest and prosecution policies"). It does not inexorably follow from the existence of a law that police have a regular or established practice of making arrests for any violations. Dismissal on pleading grounds alone is thus fully warranted.

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss.

30

Dated: August 10, 2026

Respectfully submitted,

s/ William J. Taylor, Jr.
Janet Carter
William J. Taylor, Jr.
EVERYTOWN LAW
450 Lexington Avenue
P.O. Box 4184
New York, NY 10163
(646) 324-8215
jcarter@everytown.org
wtaylor@everytown.org

Michiko A. Brown
City Attorney
CITY AND COUNTY OF DENVER
201 West Colfax Avenue
Suite 1207
Denver, CO 80202
(303) 912-5813
michiko.brown@denvergov.org

Carey R. Dunne
Zack Goldberg
Martha Reiser
FREE AND FAIR LITIGATION
GROUP, INC.
266 West 37th Street, 20th Fl.
New York, NY 10018
(646) 434-8604
carey@freeandfair.org
zack@freeandfair.org
martha@freeandfair.org

31

## CERTIFICATE OF CONFERRAL

I hereby certify that the parties have conferred in good faith regarding Defendants' motion to dismiss. They met via a videoconference on July 21, 2026, during which Defendants identified the jurisdictional, statutory, and pleading deficiencies in Plaintiff's complaint. They then corresponded via e-mail, and, on July 24, 2026, Plaintiff filed a motion to amend its complaint to address the jurisdictional deficiency. This Court granted the motion to amend, and the parties conferred regarding Plaintiff's amended complaint via videoconference on August 6, 2026. Defendants noted that the jurisdictional deficiency had not been cured, and again raised the statutory and pleading bases for their motion to dismiss. Plaintiff stated that it opposes the motion.

Dated: August 10, 2026

s/ William J. Taylor, Jr.
William J. Taylor, Jr.

## CERTIFICATE AS TO ARTIFICIAL INTELLIGENCE USAGE

I hereby certify that no portion of this filing was drafted by Artificial Intelligence.

Dated: August 10, 2026

s/ William J. Taylor, Jr.
William J. Taylor, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I served a true and complete copy of the foregoing DEFENDANTS' MOTION TO DISMISS upon all parties herein by e-filing with the CM/ECF system maintained by the Court, which will send notification of such filing to the parties of record.

Dated: August 10, 2026

<u>s/ William J. Taylor, Jr.</u>
William J. Taylor, Jr.