**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 26-cv-01929-SKC-TPO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
DENVER POLICE DEPARTMENT,

Defendants.

---

**RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

---

Plaintiff, the United States of America submits the following response in opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Def. Mot.) [ECF 33].

## INTRODUCTION

Pursuant to 34 U.S.C. § 12601 (Section 12601), it is unlawful for law enforcement officers to engage in a pattern or practice of conduct that deprives persons of their constitutional rights. Section 12601 applies in this case because Denver's AR Ban[1] and Magazine Ban[2] are unconstitutional, and when law enforcement officers enforce those ordinances, their conduct necessarily deprives persons of their constitutional rights.

Here, Defendants cannot validly justify their conduct; instead, they attack the applicability of Section 12601 to their unconstitutional practices. However, Defendants tacitly concede that

---

[1] Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c) (AR Ban).
[2] Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g) (Magazine Ban).

Plaintiff's reading of Section 12601 is literally accurate. That is why they urge the Court not to read the statute literally. Def. Mot. 17. Why do Defendants ask the Court to reject a literal reading of the statute? Defendants know that if the Court accepts the text of Section 12601 at face value, it must deny their motion to dismiss. Therefore, they argue that the Court should look to extra-textual sources to justify imposing a judicial gloss on Section 12601 that restricts its applicability in a way that is not supported by the plain text of the statute. In short, Defendants "abhor plain meaning and prefer[] instead to elevate legislative history and their own curated account[] of [the] law's 'purpose' over enacted statutory text." *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 443 n.6 (2024) (Gorsuch, J., concurring) (cleaned up). The Court should reject Defendants' suggestion to add a judicial gloss to the text.

Instead, the Court should follow established precedent that Section 12601 authorizes the United States to seek injunctive relief when law enforcement officers enforce a city or county's unconstitutional official policy. Only two cases have addressed this issue: *United States v. Cnty. of Maricopa*, 889 F.3d 648 (9th Cir. 2018), and *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019), Both cases support the United States' plain reading of Section 12601 authority. In *Maricopa County*, the court held that Section 12601 authorizes the United States to seek an injunction against "a governmental authority whose own official policy causes it to engage in a pattern or practice of conduct by law enforcement officers that deprives persons of federally protected rights." *Cnty of Maricopa,* 889 F.3d at 653 (citation and quotation marks omitted; emphasis added). The ordinance is obviously Denver's official policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) (act of a "[legislative] body unquestionably constitutes an act of official government policy"). In *Colorado City*, the court held that Section 12601 authorizes the United States to seek relief when law enforcement officers "violate constitutional rights—

*whether or not those violations arose from an official policy*." *Id.,* 935 F.3d at 810 (emphasis added).

Defendants recognize that Section 12601's plain text supports Plaintiff's claim for injunctive relief against law enforcement officers' enforcement of the ordinances. That is why in their motion to dismiss they do not attack the actual claim Plaintiff has brought. Instead, they use a strawman characterization of Plaintiff's claim. They contend that the Complaint must be dismissed because Section 12601 does not authorize facial challenges to statutes and the Complaint alleges the ordinances are facially invalid. Def. Mot. 16.[3] That is misdirection. Plaintiff has not brought a facial challenge to the ordinances.[4] Rather, the Complaint alleges that the City's law enforcement officers violated Section 12601 when they engaged in a pattern or practice of conduct that deprived citizens of Denver of their constitutional rights when they enforced those manifestly unconstitutional ordinances. Am. Compl. ¶¶ 50-52.

Next, Defendants argue that Plaintiff's use of Section 12601 to protect Second Amendment rights is "unprecedented." Def. Mot. 1. That is not true. The United States recently entered into a consent decree agreement in a Section 12601 case asserting law enforcement violations of the Second Amendment. *See* Consent Decree Settlement Agreement in *United States v. Los Angeles County Sheriff's Department*, Case No. 2:2025-cv-09323, United States District Court for the Central District of California [ECF 36]. The use of Section 12601 to vindicate the violation of

[3] On July 1, 2026, the United States filed its complaint and moved for a temporary restraining order in *United States v. California*, No. 8:26-cv-01697 (C.D. Cal.). A few days later, the district court denied Plaintiff's TRO. *See United States v. California*, 2026 WL 2004372 (C.D. Cal. July 9, 2026). In its order, the court suggested the United States had brought a "facial" challenge. *Id*. at *4. This is not the considered holding of the court. Rather, the court stated there "may be by merit" to the United States' claim but due to the "accelerated nature" of the TRO, it did not have an opportunity to "carefully interpret the statute and examine its plain language" and the United States' claims. *Id*.

[4] The word "facial" does not appear in the Complaint.

Second Amendment rights is no longer unprecedented. Nor has it ever been unprecedented for the United States to apply Section 12601 to vindicate a myriad of constitutional rights.

The parties agree about much. Defendants concede that the plain text of Section 12601 authorizes the United States to seek injunctive relief against law enforcement misconduct depriving persons of their constitutional rights. Def. Mot. 17. Presumably, Defendants cannot overcome *Maricopa County's* and *Colorado City's* holdings that Section 12601 protects against misconduct from enforcement of the City's official policies. The fundamental disagreement is whether Section 12601 is designed to protect all constitutional rights, including the right to keep and bear arms codified in the Second Amendment. After all, the plain text of the statute says as much. The City takes a different view and invites this Court to carve out the Second Amendment from the other constitutional rights protected by Section 12601. The United States urges the Court to decline the City's invitation, and to uphold the statute's protection of all constitutional rights—even those that the City disfavors.

## ARGUMENT

### I. Defendants' Procedural Error Bars Granting Their Motion.

Defendants attached voluminous materials to their motion and requested the Court to consider facts asserted in those materials. Def. Mot. 9-11; 25-26, Exs. 1, 2. However, as the Supreme Court reaffirmed earlier this year, a "court *cannot consider* matters outside the pleadings" when ruling on a Rule 12(b)(6) motion. *Berk v. Choy*, 607 U.S. 187, 193 (2026) (emphasis added; citation and internal quotation marks omitted). "Importantly, in assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the 'allegations within the four corners of the complaint,' and cannot consider other pleadings or external allegations." *Brown v.*

*City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (citation omitted). Defendants' exhibits 1 and 2 are not subject to judicial notice.

Defendants submitted their extraneous materials to assert that the Department's past Section 12601 enforcement actions were narrowly focused. Even if the Court reviews those materials, it cannot take notice of the underlying "fact" Defendants are trying to prove, i.e., that all of the Departments' enforcement actions were as narrowly focused as Defendants suggest.[5] Accordingly, the Court should disregard the extraneous materials and arguments based on them—and, *a fortiori*, it cannot consider the factual assertions *Amici* set forth in their brief.[6]

In *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040 (9th Cir. 2025), the district court took judicial notice of several documents and made factual conclusions based on those documents. The Ninth Circuit reversed, holding that even if it were proper to notice the documents, the parties disputed their significance. *Id.* at 1056. "[T]hese disagreements underscore that such issues are not capable of resolution at the pleading stage." *Id.* *See also McAdams v. Wyoming Dep't of Corr.*, 561 F. App'x 718, 720 (10th Cir. 2014) (holding that district court erred when it accepted contested version of facts set forth in government report).

Rather than attempt to resolve this disputed issue at the motion to dismiss stage, the Court should follow the Supreme Court in *City of Los Angeles v. Preferred Commc'ns, Inc.*, 476 U.S. 488 (1986), where the Court noted that in a constitutional case where facts are disputed, courts should not "decide the legal questions posed by the parties without a more thoroughly developed record . . . in which the parties have an opportunity to prove those disputed factual assertions upon

---

[5] *See* Section V.D., *infra*, the Department's enforcement has not been so confined.

[6] The *Amici* include former Civil Rights Division attorneys. Those attorneys' discussion of the internal deliberative work product of their former client in their brief is unseemly at best, and improper to consider.

which they rely." 476 U.S. at 494. This factual dispute is inappropriate to resolve at the pleading stage of the litigation, and this Court should deny the Defendants' motion.

## II. Plaintiff Has Plausibly Pled a Section 12601 Claim.

### A. *Berk* Confirmed That Defendants Face a Daunting Task to Prevail on a Motion to Dismiss.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court recently confirmed in *Berk* that it is difficult for a defendant to prevail on a motion to dismiss. A complaint that plausibly asserts facts supporting a plaintiff's claims, "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556). "By design, this system of pleading makes it relatively easy for plaintiffs to subject defendants to discovery . . .." *Berk*, 607 U.S. at 194. The Supreme Court has "consistently rejected" efforts to require more. *Id*.

### B. A Section 12601 Claim's Three Elements.

The United States brought this action pursuant to the statutory authority set forth in Section 12601. Am. Compl. ¶¶ 48-52. Section 12601(a) states in pertinent part:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

Thus, to state a claim under Section 12601, the Complaint must plausibly allege three elements:

(1) a "governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority;"

(2) "to engage[d] in a pattern or practice of conduct by law enforcement officers;"

(3) that "deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."

**C. The United States Has Plausibly Pled All Three Elements of a Section 12610 Claim.**

Here, Plaintiff has plausibly pled all three elements of a Section 12601 claim:

*1. Governmental Authority*. The Complaint alleges that Denver and the Denver Policy Department are governmental authorities and law enforcement officers employed by Defendants are acting on their behalf. Am. Compl. ¶¶ 48-49. These allegations are hardly disputable, and Defendants do not argue that Plaintiff has failed to plausibly plead this element of its claim.

*2. Enforcement*. The Complaint alleges that Denver law enforcement officers are enforcing the ordinances. Am. Compl. ¶¶ 42-46; 50-52. These allegations are sufficient to state a plausible claim that the ordinances are being enforced as set forth in more detail in Section VI.

*3. Second Amendment Violation*. Recently, in *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), the Supreme Court provided important guidance for courts' reviewing Second Amendment claims. The Court summarized and clarified the two-part "*Bruen* test."[7] At step one, a court must determine whether the law before it clashes with the plain text. *Id.*, 146 S. Ct. at 2043 (cleaned up). This requires a court to ask three questions:

[7] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022).

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms? *Id*.

If the answer to these three questions is "yes," the plain text applies and the law "is presumptively unconstitutional." *Id*. at 2044.

Thus, at this stage, a plaintiff's burden under *Bruen* step one (as clarified in *Wolford*) is very light. It is not necessary to anticipate and counter Defendants' *Bruen* step two arguments—especially given that a plaintiff need only plead "the factual basis" of the complaint and need not "set out a legal theory." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014).

Plaintiff has plausibly pled all elements of a substantive violation of the Second Amendment. Am. Compl. ¶¶ 22-33 (AR Ban); 36-41 (Magazine Ban). Defendants do not dispute these allegations. They have chosen not to engage the Second Amendment issue at this stage of the litigation.[8] The issue before the Court is not whether the facts Plaintiff allege establishes a violation of the Second Amendment. They plainly do and Defendant does not dispute this. Defendants' motion is based on a purely legal argument, i.e., their assertion that Section 12601

[8] Defendants acknowledge a split of authority in other circuits regarding whether the Second Amendment protects AR-15 rifles and magazines and that the Supreme Court is set to resolve that circuit split in its next term. Def. Mot. 1. They do not, themselves, argue that the City's ordinances are constitutional. Rather, they say such an argument is unnecessary because their motion may be decided on other grounds. *Id*. Even if Defendants had not conceded the constitutional question, at this stage of the litigation, for purposes of determining the merits of Defendant' argument regarding the scope of Section 12601, the Court would need to assume the merits of Plaintiff's assertion that the AR Ban and the Magazine Ban violate the Constitution. Whether a party can assert a claim in the first place must not be confused with the court's assessment of whether the party will ultimately succeed on the merits. *Cf. Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs*., 121 F.4th 1374, 1378 (10th Cir. 2024) (The merits of a claim are independent of whether a plaintiff may bring the claim in the first place.).

does not authorize the United States to bring this action. This argument fails for the reasons set forth in the next section.

## III. The Plain Text of Section 12601 Authorizes the Relief That Plaintiff Seeks.

### A. The "Cardinal Canon" of Statutory Interpretation.

The "cardinal canon" of statutory interpretation is that a "legislature says in a statute what it means and means in a statute what it says there" regardless of whether "legislative history points to a different result." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) (emphasis added). When the words of a statute are unambiguous, this first canon is also the last and the "judicial inquiry is complete." *Id*. at 254 (citations and internal quotation marks omitted); *see also Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019) (internal citations omitted) (a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself, and where that examination yields a clear answer, judges must stop); *Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 450 (2002) (when interpreting a statute, the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case and, if so, the inquiry ceases). Thus, the best evidence of the purpose of a statute is the statutory text itself. *W. Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991). "Where [statutory text] contains a phrase that is unambiguous . . . [courts] do not permit it to be expanded or contracted by the statements of individual legislators or committees during the course of the enactment process." *Id*. at 98-99.

### B. The Plain Text Authorizes Plaintiff's Action.

This dispute concerns the scope of law enforcement misconduct prohibited by Section 12601. Defendants incorrectly argue that the statute prohibits only some law enforcement conduct

that deprives people of their rights. Wrong. Section 12601's plain text manifestly prohibits *all* law enforcement conduct that deprives people of their constitutional rights.

Section 12601 is unambiguous and its broad remedial scope is inescapable to any reasonable reader. As stated in *Colorado City*, the statute provides a civil cause of action to the United States Attorney General when the government's agents "engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 935 F.3d at 811 (cleaned up). Enforcing an unconstitutional law obviously deprives persons of their constitutional rights. Therefore, the statute authorizes the United States to seek to enjoin such conduct.

The text of the Section 12601 proscribes law enforcement officers from engaging in "a pattern or practice of *conduct*" that deprives persons of their constitutional rights. The most common sense of the word "conduct" is "personal behavior." *The Random House Dictionary of the English Language*, 2nd ed., unabridged (New York: Random House, 1987); *Conduct*, Black's Law Dictionary (12th ed. 2024) ("[p]ersonal behavior . . .."). Thus, "conduct" means "personal behavior, whether by action or inaction and is a term that transcends the legal context." *United States v. Jordan*, 509 F.3d 191, 196 (4th Cir. 2007) (citation and quotation marks omitted). It follows that "to engage in a pattern or practice of conduct by law enforcement officers" means simply to engage in a pattern or practice of personal behavior by law enforcement officers. And a violation of Section 12601 occurs if that behavior results in the deprivation of persons' constitutional rights. This is a straightforward conclusion drawn from unambiguous text.

The United States previously applied this plain statutory language to an analogous pattern of practice of law enforcement conduct that deprived persons of their constitutional rights. The enforcement of a statute was part of the basis of the United States' Section 12601 claim against

the Fergeson Police Department. Specifically, the police department's enforcement of the city's "Failure to Comply" ordinance was law enforcement conduct that deprived the citizens of Ferguson of their constitutional rights. *See Compl., United States v. City of Ferguson*, No. 4:16-cv-00180 (E.D. Mo. Feb. 10, 2016) [ECF 1] ¶¶45-46, 51, 62, 74, 88, 186.

Like the State of Colorado before them,[9] Defendants argue that the statute should not apply to law enforcement "conduct" generally but only to a certain kind of law enforcement conduct which they call "abusive police practices." *See* Def. Mot. 6, 8 (arguing that the statute proscribes only "abusive police practices"). Defendants thus want the Court to edit the statute so that it applies only to law enforcement officers who have "engage[d] in a pattern or practice of ~~conduct~~ *abusive police practices*" that deprive persons of their constitutional rights.

As with Colorado, here, Defendants are wrong for two reasons. First, even if their edit were valid—it is not—"abusive police practices" still fairly captures enforcement of unconstitutional laws. Secondly, the Court has no authority to edit the statute. Defendants' argument amounts to this: Congress intended to confer a very narrow grant of remedial authority on the Department, but in a fit of inattentive drafting Congress accidentally conferred a very broad grant. Therefore, Defendants assert that this Court should fix an imagined congressional mistake. But "[h]ad Congress intended to impose such a limitation, it could easily have [used those] simple word[s]. But it did not do so, and [courts] cannot rewrite the statute to insert an additional restriction that Congress omitted." *Charboneau v. Davis*, 87 F.4th 443, 454 (9th Cir. 2023).

Having read Plaintiff's response to Colorado's motion to dismiss and therefore anticipating our response, Defendants try to get ahead of it by including their own "strikethrough" argument.

---

[9] *See* Motion to Dismiss [ECF 30], 16, in *United States v. Colorado*, Case No. 2026-cv-1950-SKC-TPO.

Def. Mot. 20. Defendants' argument is equal parts disingenuous and false. Defendants present the following strikethrough version of Section 12601 that they say Plaintiff has advocated:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice ~~of conduct by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles~~ that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

Def. Mot. 20. Defendants then brashly argue that "[a]ny interpretation that effectively deletes so much text cannot be correct." *Id*. Of course, Plaintiff has never so much as hinted that any of that text should be effectively deleted from the statute or not given effect.

The text Defendants strike through can be divided into two parts: "[1] of conduct by law enforcement officers [2] or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles." In their motion, Defendants state: "The statute does not cover any and all unlawful conduct, but only that carried out by law enforcement officers." Def. Mot. 19. That is correct and, as set forth above, Plaintiff has argued extensively that enjoining "conduct by law enforcement officers" that deprives persons of their constitutional rights is integral to the statutory scheme. It is difficult to understand why Defendants would contend that Plaintiff would effectively delete that text when just the opposite is true—Plaintiff has insisted on giving effect to the text in full.

As to the second part of Defendant's supposed strikethrough, the part of the statute concerning juvenile justice officials would certainly be applicable in a case involving the juvenile justice system. But, that provision of the statute is not applicable to this case; Plaintiff did not allege Defendant's misconduct in the administration of juvenile justice. But neither has Plaintiff ever argued that the provision should be effectively deleted or not given effect.

Thus, Defendants' "strikethrough" argument is analytically incorrect and inapplicable.

## IV. Statutory Interpretation Leads to the Same Conclusion as the Plain Text Analysis.

The unambiguous text of Section 12601 supports the conclusion that the statute authorizes the United States to seek injunctive relief in this case. *See Barnhart*, 534 U.S. at 450. Accordingly, the judicial inquiry into the meaning of the statute should end. Even if the text were ambiguous, though, the other rules of statutory construction overwhelmingly support the same conclusion.

### A. The Legislative History of the 1991 Bill Supports Plaintiff's Claim.

In 1994, Congress passed Section 12601 as part of the Violent Crime Control and Law Enforcement Act of 1994, 108 Stat 1796 (Crime Act). Congress did not hold hearings on the provision of the Crime Act that became Section 12601. Thus, the statute does not have any legislative history. Section 12601 is, however, similar to a provision of H.R. 3371, a failed bill that would have enacted a statute called the Omnibus Crime Control Act of 1991 (1991 Bill). *United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *3 (S.D. Ohio Aug. 3, 2000). Significantly, the 1991 Bill's legislative history states: "The standards of conduct under the Act are the same as those under the Constitution, presently enforced in damage actions under section 1983." H.R. Rep. No. 102–242, 102nd Cong., 1st Sess. at 138 (Committee Report). Thus, the legislative history expressly states that Congress intended the text of the law to create an extremely broad remedy for the United States to redress violations of any constitutional right like the broad remedy available to private litigants under Section 1983.

### B. Section 12601 Overturned *City of Philadelphia*.

The Committee Report refers to the Third Circuit's decision in *United States v. City of Philadelphia*, 644 F.2d 187 (3d Cir. 1980). Defendants' reliance on that court's discussion (Def. Mot. 8, 22) is misplaced. At the time, *City of Philadelphia* held that the United States did not have statutory authority to seek equitable relief for law enforcement misconduct. *See* 644 F.2d 197.

The members of the committee thus saw that case as a problem to be solved, not an example to be followed. In other words, the whole purpose of Section 12601 was to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" created by *City of Philadelphia*. Committee Report, 137. It is difficult to understand why Defendants believe the Court should follow the limitations imposed in *City of Philadelphia* when the whole point of Section 12601 was to overturn that case.

### C. Section 12601 and Section 1983 Should Be Interpreted *In Pari Materia*.

Section 12601 and Section 1983 are sister statutes that address the same subject—remedying civil rights violations by government actors. *See Cnty. of Maricopa*, 889 F.3d at 653.[10] As noted above, the Congressional Committee Report stated that "The standards of conduct under [Section 12601] *are the same* as those under the Constitution, presently enforced in damage actions under section 1983." Committee Report at 138 (emphasis added). The statutes are thus *in pari materia*.

Under the *in pari materia* doctrine, statutes that address the same subject matter should be construed consistently with each other. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 305 (2006); *see also Branch v. Smith*, 538 U.S. 254, 281 (2003). Both statutes are remedial in nature. "Section 1983 was meant to be a remedial statute and should be 'broadly construed" to provide a remedy "against all forms of official violation of federally protected rights.'" *Valenzuela v. City of Anaheim*, 6 F.4th 1098, 1102 (9th Cir. 2021) (quoting *Dennis v. Higgins*, 498 U.S. 439, 445 (1991)).

[10] *See also United States v. City of Columbus, Ohio*, 2000 WL 1133166, at *7 (S.D. Ohio 2000) (holding that the grant of authority to the Attorney General reflected in Section 12601 was drafted in light of Section 1983).

Defendants argue that Section 12601 was passed to address a particular problem (Rodney King-type police abuse), and they erroneously assert that the statute has been employed only in that context. Even if Defendants' assertions were true, the history of Section 1983 demonstrates that the remedial scope of the statute is unaffected.

Congress passed Section 1983 as part of the Ku Klux Klan Act of 1871, ch. 22, 17 Stat. 13 (Klan Act). As the name of the Klan Act implies, the members of the 42nd Congress who voted to enact Section 1983 had a specific problem in mind (vindicating the constitutional rights of freedmen). Moreover, despite the statute's broad remedial language, it languished in obscurity for nearly a century.[11] If Defendants' theory of Section 12601's statutory interpretation were correct—i.e., that the Court should apply the statute to redress only the few types of constitutional violations that Defendants think should be redressed—then Section 1983 likewise would have been cabined in and would long ago have been relegated to the status of a historical relic of the Reconstruction Era. After all, Section 1983 was passed to address a particular problem and it was sparsely enforced for decades. Thankfully, that did not occur. Indeed, Section 1983 ultimately emerged as a powerful engine for vindicating deprivations of constitutional rights by government actors. Likewise, read *in pari materia*, Section 12601 provides broad authority to remedy patterns of practice of police misconduct and is not cabined to only the specific problems on which Defendants want to focus.

## V. Defendants' Arguments That Section 12601 Does Not Apply Are Meritless.

Defendants advance several arguments in support of their assertion that Section 12601 does not impose liability. Plaintiff will address those arguments in this section.

[11] "Despite its noble beginnings, § 1983 remained in disuse for nearly a century." Rodney A. Smolla, *The History of § 1983—The Civil Rights Act of 1871*, 2 Federal Civil Rights Acts § 14:2 (3d ed. 2026) (citations omitted).

### A. No Authority Supports Defendants' Interpretation of Section 12601.

There is no support for Defendants' limited view of Section 12601's scope. According to Westlaw, as of August 14, 2026, Section 12601 (or, as it was previously codified, 42 U.S.C. § 14141) has been cited in 660 cases. Plaintiff's counsel reviewed all 660 cases. In the overwhelming majority of those cases (approximately 95%), courts dismissed *pro se* plaintiffs' attempts to assert a private right of action under the statute or mentioned the statute only incidentally in their discussion of other issues. Of the handful of remaining cases, only six courts engaged in any meaningful analysis of the statutory text. Based on this exhaustive research, no court has ever held that Section 12601 should be interpreted to radically narrow the reach of its plain text as Defendants suggest.

### B. Enforcement of an Unconstitutional Law Incurs Section 12601 Liability.

According to Defendants, Section 12601 does not impose liability when law enforcement officers are enforcing the law "as written." Def. Mot. 20. No case supporting Defendants' proposed limitation exists. Indeed, as we have seen, just the opposite is true. *See Maricopa County*, 889 F.3d at 653; *Colorado City*, 935 F.3d at 810. And the difference between the "official policy" at issue in *Maricopa County* and the ordinances at issue here is of no consequence. The act of a "[legislative] body unquestionably constitutes an act of official government policy." *Pembaur* 475 U.S. at 480.

Unsurprisingly, counter to Defendants' assertion, the Department has used Section 12601 to remedy law enforcement officers' enforcement of unconstitutional laws. For example, in the Department's *Report of Investigation of the Ferguson Police Department*, March 4, 2015 (available at http://bit.ly/4vWiJ2j), the Department reported that law enforcement officers' enforcement of Ferguson, Missouri's unconstitutional "Failure to Comply" municipal ordinance

was one of the patterns or practices of conduct that gave rise to constitutional violations in violation of Section 12601. *Id.* at 16, 19.

Defendants nevertheless argue that law enforcement officers' enforcement of a criminal statute cannot be a basis of liability because such violations "inhere in the letter of a law." Def. Mot. 21. This is wrong as a matter of Section 12601 law as *Maricopa County* plainly holds. Defendants' position also conflicts with decisions under Section 12601's sister statute, Section 1983. In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court stated that a city "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated." *Id.* at 690 (emphasis added). Thus, it is the "execution of a government's policy . . . [that] inflicts the injury [for which] the government as an entity is responsible under § 1983." *Id.* at 694. (emphasis added). Contra Defendants' assertion, it is the implementation or execution of a law that "inflicts the injury," *id.*, and not merely the law's existence. This is plain from *Heller* itself. *See D.C. v. Heller*, 554 U.S. 570, 636 (2008), where the Supreme Court affirmed the D.C. Circuit's judgment ordering entry of an injunction barring the District of Columbia's law enforcement officers from enforcing the unconstitutional law. That order would make no sense if those law enforcement officers' conduct of enforcing the unconstitutional law was not the conduct that resulted in the deprivation of the plaintiffs' Second Amendment rights.

Defendants' argument makes no sense on its face. The mere existence of a law does not violate anyone's rights if the law is never enforced.[12] Where criminal laws are concerned, people's

[12] No one has standing to challenge a moribund law. *See Mayle v. State of Illinois*, 956 F.3d 966, 970 (7th Cir. 2020) (citation omitted) (holding that plaintiff lacked standing to challenge criminal

rights are violated when other people (usually law enforcement officers) engage in conduct that violates them. The remedy for an unconstitutional statute is to enjoin its enforcement, not to order the legislative body to repeal it. Courts have no power to do the latter. *See Whole Women's Health v. Jackson*, 595 U.S. 30, 44 (2021) (No court may enjoin challenged laws themselves; an injunction only prevents "named defendants from taking specified unlawful actions.").

**C. The Supreme Court Has Not Rejected "Literal" Interpretations of Statutes.**

Defendants understand that a literal reading of the plain text of Section 12601 completely eviscerates their motion to dismiss. Instead, they argue that *Chevron USA Inc. v. Plaquemines Parish, Louisiana*, 608 U.S. 1(2026), stands for the proposition that statutory texts should not be read literally. Def. Mot. 17. Wrong again. Justice Thomas (who wrote for the Court) would be the last person to eschew a literal reading of a statute, and in *Plaquemines Parish* he did not. Rather, he warned against a "literalist" reading, which, as we shall see, is not the same as a *literal* reading.

The federal removal statute at issue in *Plaquemines Parish* allows defendants to remove cases "relating to" an act taken under color of a federal office. 28 U.S.C. § 1442(a)(1). In its opinion, the Court grappled with the scope of the statutory phrase "relating to." The Court cautioned against an overly broad "literalist" reading of the phrase because in a hyper-literalist sense, "everything is related to everything else." 608 U.S. at 11 (citation and quotation marks omitted). Justice Thomas explained that the ordinary understanding of "'relating to' requires a connection that is not tenuous, remote or peripheral." 608 U.S. at 12. Thus, an ordinary reader "would not understand the statement that someone is 'related to Joe' to refer to 'a mutual tie to

---

laws that were no longer enforced but remained in statute books "as a residue of legislative inertia").

Adam and Eve.'" *Id*. The ordinary, not literalist, meaning of the text is preferred. *Id*. (citation and quotation marks omitted).

In *Plaquemines Parish*, Justice Thomas also cited a passage from an essay by the late Justice Scalia which sheds light on the point he was making in his opinion. 608 U.S. at 11-12 (citing Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law: an Essay*, Amy Gutmann, ed. (Princeton University Press, 1997)). In the essay, Justice Scalia discussed a case in which a criminal defendant offered to exchange an unloaded firearm for cocaine. The issue there was whether the defendant "used" the firearm in the crime and was therefore subject to a sentence enhancement statute. Justic Scalia argued that while in a "literalist" sense, the defendant *used* the firearm, the way he used it was obviously not the sense of "use" meant by Congress. Scalia wrote:

> [W]hen you ask someone, "Do you use a cane?" you are not inquiring whether he has hung his grandfather's antique cane as a decoration in the hallway. But while the good textualist is not a literalist, neither is he a nihilist. Words do have a limited range of meaning, and no interpretation that goes beyond that range is permissible.

A. Scalia, *A Matter of Interpretation*, 24.

Contrary to Defendants' assertion, here, Plaintiff has not advanced a "literalist" reading of Section 12601 at all. Indeed, the only real dispute in this case is whether the word "conduct" in Section 12601 applies to actions taken to enforce an unconstitutional law. And under the ordinary meaning of the word "conduct," a law enforcement officer engages in "conduct by a law enforcement officer[]" when he enforces an unconstitutional official policy (such as the official policy embedded in the AR Ban and the Magazine Ban).

A hypothetical will help illustrate the exact issue here: suppose a Denver police officer arrests someone for possessing a 16-round magazine.

1. Arresting someone is certainly "conduct."

2. As the Third Circuit recently held,[13] 16-round magazines are protected by the Constitution. Assuming that holding is correct[14] arresting someone for possessing one deprives them of their constitutional rights.

3. Therefore, the conduct of arresting that person deprived them of their constitutional rights.

4. If Denver law enforcement has engaged in a pattern or practice of such conduct, then Denver is liable pursuant to Section 12601.

In summary, Plaintiff has not stretched the meaning of the statute to unreasonable lengths in an irrational "literalist" direction. Arresting a person for violating a statute is well within the ordinary "range of meaning" of the word "conduct." That is why the interpretation advanced by Plaintiff has been adopted by the only two courts to consider the matter. *See Maricopa County*, 889 F.3d at 653; *Colorado City*, 935 F.3d at 810.

**D. The Department's Past Practice Does Not Cabin the Scope of the Statute.**

Defendants engage in an extensive discussion of past agency practice with respect to the enforcement of Section 12601. Def. Mot. 9-11; 25-26, Exs. 1, 2. According to Defendants, in the past, the Civil Rights Division has focused exclusively on Defendants' characterization of abusive police tactics cases and has not enforced Section 12601 the way it is enforcing the statute in this

[13] *See Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 183 F.4th 211, 250 (3d Cir. 2026).

[14] The Court must assume the merits of Plaintiff's claim when analyzing whether it has standing to assert it. *Cf. Smith v. Albany Cnty. Sch. Dist. No. 1 Bd. of Trs.*, 121 F.4th 1374, 1378 (10th Cir. 2024) (The merits of a claim are independent of whether a plaintiff may bring the claim in the first place.).

action.[15] Even if the Court were to consider the matters that Defendants raised, their discussion of past agency practice would not move the needle in favor of their motion for several reasons.

First, the Defendants' assertions are false.[16] The Division's past practice has not been as limited as Defendants suggest.[17] For example, one of the Division's major enforcement actions was against defendants who violated the Establishment Clause of the First Amendment. See *Colorado City*, 935 F.3d at 806. There were no allegations of police brutality. In *Maricopa County*, the allegations of misconduct included filing baseless lawsuits in retaliation for exercising First Amendment rights.[18] It is difficult to imagine conduct less similar to the incident involving Rodney King. If the Department has employed the statute to remedy First Amendment violations, why can't it also employ it to remedy Second Amendment violations? Defendants do not say.

More importantly, even if the Department is enforcing the statute in a way that is different from its past practice, that has no relevance to the scope of the authority Congress granted to the Attorney General in Section 12601. Different administrations have different priorities, and the agency practice in prior administrations does not delineate the scope of the authority set forth in a

---

[15] It would be improper, in any respect, for the Court to go beyond the "four corners" of the Compliant. *Brown*, 124 F.4th at 1263. Moreover, Defendant's allegations about the scope of past agency practice are contested, and that factual dispute cannot be resolved in Defendants' favor at this stage of the litigation.

[16] Here, Defendants want this Court to decide their motion to dismiss on the basis of a disputed factual claim. The Court should decline to do so. *City of Los Angeles*, 476 U.S. at 494.

[17] Past administrations have exercised their prosecutorial discretion to use Section 12601 to investigate and bring enforcement actions to remedy: enforcement of local ordinances that are facially unconstitutional; First, Fourth, Sixth, Eighth, and Fourteenth Amendment violations, Title VI violations, and to challenge the conduct of law enforcement exercised through court clerks, prosecutors, non-sworn staff, and sworn officers and deputies. *See* "Special Litigation Section Cases and Matters, Law Enforcement Agencies," available at https://www.justice.gov/crt/special-litigation-section-cases-and-matters#police. Arguably, some of the findings that past administrations have reached have identified alleged misconduct beyond the bounds of a constitutional or federal statutory requirement, but none have suffered the opposition offered here.

[18] *United States v. Maricopa County*, 915 F. Supp. 2d 1073, 1081 (D. Ariz. 2013).

statute. Nor does it bind the agency or preclude it from deviating from that practice in the future. The Supreme Court made this clear in *United States v. Am. Union Transp*., where it stated:

> An administrative agency is not ordinarily under an obligation immediately to test the limits of its jurisdiction. It may await an appropriate opportunity or clear need for doing so. It may also be mistaken as to the scope of its authority . . . Although failure to exercise power may be significant as a factor shedding light on whether it has been conferred . . . that fact alone neither extinguishes power granted nor establishes that the agency to which it is given regards itself as impotent. Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise.

327 U.S. 437, 454 n.18 (1946) (internal citations and quotation marks omitted) (emphasis added). *See also Fed. Trade Comm'n v. Bunte Bros*., 312 U.S. 349, 352 (1941) ("Authority actually granted by Congress of course cannot evaporate through lack of administrative exercise."); *United States v. E. I. du Pont de Nemours & Co*., 353 U.S. 586, 590 (1957) (holding that the mere failure of an administrative agency to act is in no sense "a binding administrative interpretation" that the government lacks the authority to act).

Defendants cite *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 386 (2024), where the Court held that an agency's longstanding practice can inform a court's analysis of an ambiguous statute. Def. Mot. 25. Defendants' reliance on *Loper Bright* is problematic for three reasons. First, in that passage, the *Loper Bright* court was not referring to the interpretation of unambiguous statutes such as Section 12601. Second, in the very next paragraph, the Court stated that even if a court considers past practice, it is not bound by it. *Loper Bright Enterprises*, 603 U.S. at 386. Third, *Loper Bright* stands for exactly the contrary proposition for which Defendants cite it. Defendants claim that the case supports an extratextual gloss on Section 12601. But, the Court said the opposite. The Court stated that "statutes . . . have a single, best meaning" that is "'fixed at the time of enactment.'" *Id*. at 400 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018)).

Defendants' reliance on *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026), is unavailing. According to the Tenth Circuit panel, in 1997, the Immigration and Naturalization Service published a regulation that stated that 8 U.S.C.A. § 1225 generally applies at the border while § 1226 applies in the country's interior, and in 2025, the government argued § 1225 does apply in the interior.[19] This has no similarity to this case. The Department of Justice never issued a regulation stating that the scope of Section 12601 is limited to addressing only excessive force allegations. In fact, as noted above, over the years it has employed the statute in a host of situations that bear no resemblance to excessive force allegations. The Department has always maintained that the statute addresses law enforcement misconduct that deprives people of their civil rights. And that is what this case is about. Again, Defendants assertion that this is a "facial challenge[]" to a law is false. *See* Def. Mot. 25.

Finally, Defendants shamelessly quote Assistant Attorney General Dhillon's statements in a recent interview out of context. Def. Mot. 10-11, 26. Defendants proffer that Assistant Attorney General Dhillon stated that the Department's use of Section 12601 is "revolutionary," implying that the way the Department is using the statute (i.e., targeting law enforcement conduct that violates civil rights) has never been done. This is false. In context, Assistant Attorney General Dhillon said that the federal government's use of the statute against jurisdictions, like Denver, that have violated Second Amendment rights is a new emphasis in civil rights enforcement. Specifically, she said: "And so, I think this is just one of the most important and revolutionary changes to the Civil Rights Division is [its attention to] this neglected right [i.e., the Second

[19] As the panel noted, other courts have come out differently. Plaintiff takes no position on the merits of the Tenth Circuit's ruling. Plaintiff's point is that regardless of the merits of the ruling, it does not support Defendants' position.

Amendment right].”[20] Defendants attempted use of part of a statement outside the pleadings in no way limits the United States’ authority under Section 12601 to remedy the types of civil rights violations in which Defendants engage, here.

**E. What Members of Congress Subjectively Intended Is Not Relevant to the Scope of the Statute.**

Defendants argue that notwithstanding the plain text of Section 12601, its scope is limited to addressing Rodney King-like situations. Def. Mot. 6. Defendants cite no authority for the proposition that a statute is limited by what members of Congress might have been thinking about when they voted for it, and there is none. Conversely, there is plenty of authority for the opposite proposition. “[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.” *Pennsylvania Dep’t of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (cleaned up; citation omitted).

Defendants say the United States’ use of Section 12601 would dramatically expand its authority under the statute. Def. Mot. 16. This is incorrect. Either the plain text of the statute confers certain authority on the United States or it does not. Whether the United States has used the statute in a particular way is irrelevant to the issue of whether it has the power to do so.

**F. Legislative History Is Not the Law**

Defendants’ arguments find no purchase in the text of Section 12601. They face the same predicament that the defendants in *Colorado City* faced, and that court’s observation is equally pertinent here: “Unable to muster support for its position in the statutory text, Colorado City urges us to examine § 12601’s legislative history. But the Supreme Court has admonished that

---

[20] *See* The Arena with America First Legal, Reclaiming Civil Rights with Assistant Attorney General Harmeet Dhillon, at 33:30-33:40 (YouTube, June 1, 2026), https://www.youtube.com/watch?v=wdzUq0g5MJY.

'legislative history is not the law.' *That principle is particularly salient in a case where [as here] the legislative history is virtually non-existent*." 935 F.3d at 810 (cleaned up; citations omitted; emphasis added).

Defendants nevertheless urge this Court to impose their preferred judicial gloss on the text and narrow its application based on that same virtually non-existent legislative history. The first and most fundamental problem with this is that the statute is not ambiguous and, therefore, legislative history is irrelevant to its interpretation. *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 103 F.4th 45, 50 (D.C. Cir. 2024) (holding that "we need not address legislative history if 'after analyzing the text, structure and context, we conclude that the language is unambiguous'") (citation and quotation omitted). This is true even if—as Defendants mistakenly believe—the legislative history of the 1991 Bill actually pointed in a different direction than the text of Section 12601. "[T]here would be no need for a rule—or repeated admonition from the Supreme Court—that there should be no resort to legislative history when language is plain and does not lead to an absurd result, if the rule did not apply precisely when plain language and legislative history may seem to point in opposite directions." *U.S. ex rel. Totten v. Bombardier Corp*., 380 F.3d 488, 494–95 (D.C. Cir. 2004).

Defendants' other problem is that the legislative history—such as it is—actually supports a very expansive interpretation of the scope of Section 12601 consistent with the broad scope of Section 1983 and Congress' desire to close the "serious and outdated gap in the federal scheme for protecting constitutional rights" that *City of Philadelphia* created. Committee Report, 137. Defendants' devotion to legislative history at the expense of the plain text has the same problem the Court articulated recently in *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd*, 146 S. Ct. 1546, 1558–59 (2026). There, the Court noted that there is really no way to know what

the committee members (much less the other members of Congress) thought about a bill by perusing a committee report (146 S. Ct. at 1558), and the Court declined to revive the "old-time devotion to legislative history," because it is far better to focus on the text of the statute instead of a "psychoanalysis of Congress." *Id*. at 1559 (citation omitted).

### G. The Parties Agree That Section 12601 Applies to Conduct by Law Enforcement Officers.

Defendants spend two pages of their motion discussing the fact that Section 12601, unlike some other "pattern or practice" statutes, is directed solely at misconduct by law enforcement officers. Def. Mot. 23-24. The point of this discussion is unclear.

Plaintiff has repeatedly acknowledged that the statute is designed to address law enforcement conduct that deprives persons of their constitutional rights. The fact that other statutes have a broader focus is irrelevant where, as here, the Complaint is directed at conduct that falls within the narrower focus of Section 12601.

## VI. Defendants Admit They Have Enforced the Ordinances for Decades.

Defendants make a half-hearted argument that the Complaint's allegations that they have enforced the ordinances are not plausible. Def. Mot. 29-30. This is a very odd argument, coming as it does on the heels of their earlier statement that they have been enforcing the ordinances for "decades." Def. Mot. 1. Defendants' argument is even stranger in light of Exhibit 4 to their motion, a May 4, 2026, letter from Denver City Attorney Mike Brown emphatically rejecting General Dhillon's demand that Denver stop enforcing the AR Ban.

Defendants can hardly assert that it is not plausible that their law enforcement officers enforce Denver's ordinances. The thrust of Defendants' argument is that Plaintiff has not set forth granular detail about the enforcement efforts. Def. Mot. 29-30. On that score, Defendants misapply *Twombly*. Plaintiff is not required to "set out in detail the facts upon which [it] bases

[its] claim." *Twombly*, 550 U.S. at 555 n.3. (citation and internal quotation marks omitted). The factual allegations need only "be enough to raise a right to relief above the speculative level." *Id.* at 555. There is no requirement of "heightened fact pleading of specifics." *Id*. at 570.

Plaintiff has alleged that Denver police officers are bound by law to enforce the AR Ban and the Magazine Ban, and have, in fact, routinely done so. Am. Compl. ¶¶ 42-46, 51. Do these allegations rise "above the speculative level?" To ask the question is to answer it.

It is eminently plausible that Denver's law enforcement officers fulfil their duty to enforce its criminal laws, including these ordinances.[21] The police officers' statutory obligation to enforce the ordinances, standing alone, is sufficient to create a "reasonable inference" that they do so. *See Iqbal*, 556 U.S. at 678 ("reasonable inference" is all that is required). That inference is irrebuttable given that Defendants affirmatively admitted in their motion that they have enforced the ordinances for "decades."

Defendants cannot have it both ways. They cannot argue that enforcement of the ordinances has kept the community safe for decades and then turn around and say in the same motion that allegations that the ordinances have been enforced are not plausible.

## VII. Plaintiff Has Standing.

The State of Colorado has a law practically identical to the Magazine Ban. *See* Colo. Rev. Stat. § 18-12-302 ("State Magazine Ban"). Plaintiff is challenging law enforcement's misconduct in enforcing that State Magazine Ban in *United States v. State of Colorado*, Civil Action No. 26-cv-01950-SKC-TPO (D. Colo.) (the "State Case").

---

[21] Moreover, Defendants have had plenty of opportunity to disavow enforcement of the AR Ban Magazine Ban and have not done so. In such cases, enforcement of the law is presumed. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988).

Defendants cite *Bishop v. Smith*, 760 F.3d 1070, 1078 (10th Cir. 2014), for the proposition that the redressability element of standing is missing when "an unchallenged legal obstacle is enforceable separately and distinctly from the challenged provision." They then argue that the "United States has not challenged [the State Magazine Ban] in *this* lawsuit, and so enjoining the Ordinance cannot remedy the injury it asserts." Def. Mot. 16 (emphasis added).

Defendants are wrong when they argue that *Bishop* applies in this case because Plaintiff has challenged the State Magazine Ban. Defendants even acknowledge that Plaintiff has challenged the State Magazine Ban. Def. Mot. 16, n.8. Defendants' standing argument rests on their hyper-technical argument that both legal obstacles must be challenged in the same case. They cite no authority for this argument. Plaintiff filed its complaint in the State Case at about the same time that it filed its complaint in this case and the case remains pending. Plaintiff challenged law enforcement misconduct in enforcing the City's Magazine Ban and the identical State Magazine Ban simultaneously in the same court before the same judge at the same time meets the redressability requirement. Manifestly, both legal obstacles are being challenged and the Court has jurisdiction over all claims and all parties necessary to provide complete relief. Redressability is met. Defendants' argument to the contrary is the height of elevating form over substance. *See Countryman v. Farmers Ins. Exch.*, 639 F.3d 1270, 1272 (10th Cir. 2011) (rejecting argument that would elevate "form over substance" to defeat jurisdiction) (citation and quotation marks omitted).

Plaintiff elected not to duplicate the State Case in the instant case. If the Court disagrees, Plaintiff reserves the right to amend its complaint again to assert identical claims in this case. See Am. Compl. ¶¶ 41.

Although they do not articulate the matter clearly, Defendants seem to argue that their shared enforcement authority with Colorado with respect to the State Magazine Ban defeats

standing. Def. Mot. 15 n.8. But that argument is precluded by *Sanchez v. Torrez*, 173 F.4th 1202 (10th Cir. 2026), where the court held that standing does not require "complete redressability." The court stated redressability exists if there is a "connection between the alleged injury and the judicial relief requested." *Id.* at 1216 (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). "However, the Supreme Court has rejected interpretations of the rule that demand *complete redressability*, stressing that a plaintiff need show only that a favorable decision would redress "*an* injury," not "*every* injury." *Id.* at 1217 (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (first emphasis added; later emphasis in original)). "Nor must any one injury be completely redressable so long as a favorable decision would 'alleviate the injury to some extent.'" *Id.* (citations omitted). In *Sanchez*, New Mexico argued redressability was not met because even if the court gave the plaintiffs the relief they requested, others could enforce the statute. The Tenth Circuit rejected New Mexico's argument. The court held that it had never required complete redressability. *Id.* at 1217. Standing exists if the "named defendants" have "authority to enforce the challenged law." *Id.* The court has rejected arguments that "*shared enforcement authority* . . . defeats redressability." *Id.* (emphasis added).

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to deny Defendants' motion to dismiss.

DATED: August 31, 2026

Respectfully submitted:

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

R. JONAS GEISSLER
Deputy Assistant Attorney General

*/s/ Barry K. Arrington*
BARRY K. ARRINGTON
Acting Chief
Second Amendment Section

PATRICK TODD
AUSTIN ARTZ
Trial Attorneys
Second Amendment Section

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone:(202) 304-8447
E-Mail: barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via email to parties of record.

*/s/ Barry K. Arrington*
________________________
Barry K. Arrington