**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:26-cv-01929-SKC-TPO**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO, and
DENVER POLICE DEPARTMENT,

Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

---

## TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**ARGUMENT** .......... **2**

I. The United States Lacks Standing .......... 2

II. The United States's Challenge Is Not Cognizable Under Section 12601 .......... 4

A. The United States brings a facial challenge to the Ordinance .......... 5

B. Section 12601 does not authorize the United States's facial challenge to the Ordinance .......... 7

1. The United States misinterprets the text of Section 12601 .......... 7

2. The United States improperly disregards additional context .......... 11

3. The caselaw the United States cites does not support its position .......... 14

III. The United States Fails to Plead a Pattern or Practice of Conduct by Law Enforcement Officers .......... 16

IV. The Court Should Dismiss the Amended Complaint Without Leave to Amend .......... 19

**CONCLUSION** .......... **20**

## TABLE OF AUTHORITIES

### Cases


*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 17

*Berk v. Choy*,
607 U.S. 187 (2026) ... 13, 17

*Brown v. City of Tulsa*,
124 F.4th 1251 (10th Cir. 2025) ... 13

*Charboneau v. Davis*,
87 F.4th 443 (9th Cir. 2023) ... 11

*Chevron USA Inc. v. Plaquemines Parish*,
608 U.S. 1 (2026) ... 9

*City of Los Angeles v. Patel*,
576 U.S. 409 (2015) ... 6

*Doe v. Reed*,
561 U.S. 186 (2010) ... 6

*Erlenbaugh v. United States*,
409 U.S. 239 (1972) ... 10

*Fischer v. United States*,
603 U.S. 480 (2024) ... 11

*Food Mktg. Inst. v. Argus Leader Media*,
588 U.S. 427 (2019) ... 7

*Gohier v. Enright*,
186 F.3d 1216 (10th Cir. 1999) ... 19

*Grays v. TSG Auto*,
No. 1:18-cv-01762, 2019 WL 13196153 (D. Colo. June 21, 2019) ... 19

*Gundy v. United States*,
588 U.S. 128 (2019) ... 8

*Hasan v. Chase Bank USA, N.A.*,
880 F.3d 1217 (10th Cir. 2018) ... 10

*In re Gordon*,
791 F.3d 1182 (10th Cir. 2015) .......... 8

*Intelligent Designs 2000 Corp. v. CCM Assembly & Mfg., Inc.*,
No. 1:15-cv-01609, 2015 WL 8267827 (D. Colo. Dec. 7, 2015) .......... 19

*Sanchez v. Torrez*,
173 F.4th 1202 (10th Cir. 2026) .......... 4

*Santillan Quiroz v. Mullin*,
180 F.4th 1226 (10th Cir. 2026) .......... 11, 12, 13

*Town of Colorado City*,
No. 3:12-cv-08123, 2017 WL 1384353
(D. Ariz. Apr. 18, 2017), *aff'd*, 935 F.3d 804 (9th Cir. 2019) .......... 15

*Trump v. Cook*,
146 S. Ct. 2234 (2026) .......... 11

*United States v. Bello*,
194 F.3d 18 (1st Cir. 1999) .......... 14

*United States v. California*,
No. 8:26-cv-01697, 2026 WL 2004372
(C.D. Cal. July 9, 2026) .......... 6, 14, 16

*United States v. City of Ferguson*,
No. 4:16-cv-00180 (E.D. Mo. Feb. 10, 2016) .......... 16

*United States v. County of Maricopa*,
889 F.3d 648 (9th Cir. 2018) .......... 14, 15

*United States v. McCarthy*,
174 F.4th 1254 (10th Cir. 2026) .......... 10

*United States v. Moon Seals*,
--- F.4th ----, 2026 WL 2547020
(10th Cir. Aug. 28, 2026) (en banc) .......... 1, 7, 12

*United States v. Sup. Ct. of N.M.*,
839 F.3d 888 (10th Cir. 2016) .......... 5, 6

*United States v. Town of Colorado City*,
935 F.3d 804 (9th Cir. 2019) .......... 14, 15

*We the Patriots, Inc. v. Lujan Grisham*,
119 F.4th 1253 (10th Cir. 2024) ........ 3

*Wyoming ex rel. Sullivan v. Lujan*,
969 F.2d 877 (10th Cir. 1992) ........ 3

**Statutes**

34 U.S.C. § 12601 ........ 10

42 U.S.C. § 1983 ........ 10

**Other Authorities**

Black's Law Dictionary (12th ed. 2024) ........ 8

Civ. Rts. Div., U.S. Dep't of Just., *Report of Investigation of the Ferguson Police Department* (Mar. 4, 2015) ........ 15

## INTRODUCTION

The United States's opposition provides no basis to save its amended complaint from dismissal. The jurisdictional, statutory, and pleading arguments set out in Defendants' motion to dismiss remain dispositive. The Court should grant the motion in its entirety and without leave to amend.

Rather than meaningfully responding to the points Defendants made in their motion, the United States instead attacks positions Defendants did not raise—asserting that Defendants "abhor plain meaning," "urge this Court to impose their preferred judicial gloss on the text," and look to "carve out the Second Amendment from the other constitutional rights protected by Section 12601." Resp. Opp'n Mot. Dismiss, Dkt. 41 ("Opp.") 2, 4, 25. None of that is correct.

As the en banc Tenth Circuit recently reiterated, "[t]he plain meaning [of a law] derives from 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Moon Seals*, --- F.4th ----, 2026 WL 2547020, at *4 (10th Cir. Aug. 28, 2026) (en banc) (citation omitted). All of those factors demonstrate that Section 12601 authorizes a targeted cause of action to remedy law enforcement officer misconduct—and not, as the United States seeks, a roving power to facially challenge the constitutionality of Denver's restrictions on assault weapons and large-capacity magazines (the

"Ordinance") or any other state or local laws it disfavors. *See* Defs.' Mot. Dismiss First Am. Compl., Dkt. 33 ("Mot.") 16-29.

To be clear, Defendants have never argued that Section 12601 is inapplicable to violations of Second Amendment rights, *see* Opp. 4, or only covers what the United States calls "Rodney-King-type police abuse," *see id.* at 15, 24. But what it does not cover is precisely what the amended complaint alleges: a facial constitutional challenge to a democratically enacted law as written. The United States's claim is simply not cognizable under Section 12601 and should be dismissed with prejudice.

The United States also cannot overcome the standing and pleading deficiencies in the amended complaint. *See* Mot. 13-16, 29-30. Dismissal on all three of these independent, threshold grounds is fully warranted.[1]

## ARGUMENT

### I. The United States Lacks Standing

The United States lacks standing because it cannot establish that a favorable judgment in this case would redress its asserted injury: people in Denver would still

[1] The United States's claim that Defendants "conceded the constitutional question" is false. Opp. 8 n.8. The motion to dismiss is clear that while the Ordinance is consistent with the Second Amendment, the Court need not reach that question because "the federal government's suit *also* fails" on these threshold grounds. Mot. 1 (emphasis added).

be prohibited from possessing AR-15s or other semiautomatic centerfire rifles with 16-plus magazines under Colorado's large-capacity magazine law. *See* Mot. 13-16.

The United States's response turns on the fact that it has challenged Colorado's law in a separate lawsuit. *See* Opp. 27-28 (citing *United States v. Colorado*, No. 1:26-cv-01950-SKC-TPO (D. Colo.)). But that separate lawsuit does not establish subject-matter jurisdiction in this one. Redressability is analyzed with respect to the relief requested in the case at hand. That is why in *We the Patriots, Inc. v. Lujan Grisham*—which the United States failed to address in its opposition—the Tenth Circuit analyzed whether the plaintiffs' injuries would be redressed "in this action." 119 F.4th 1253, 1260 (10th Cir. 2024); *see also Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 882 (10th Cir. 1992) (analyzing whether injury would be redressable by a favorable decision "in this case"). Any relief the United States may or may not secure in its suit against Colorado is thus irrelevant to the standing analysis in this case. The United States cannot establish jurisdiction here by aggregating relief across two separate actions; redressability must follow from relief the Court can award in this case alone.

Even if its separate suit *could* affect its standing here, that suit challenges only Colorado's enforcement of the state large-capacity magazine provision—the United States has not sought relief against Denver's independent enforcement of that law in any action. The United States responds that shared enforcement authority does not defeat redressability. *See* Opp. 28-29 (citing *Sanchez v. Torrez*,

173 F.4th 1202, 1216-17 (10th Cir. 2026)). But in *Sanchez*, the Tenth Circuit determined that shared enforcement authority between state officials and the public did not defeat standing because a favorable ruling against the state defendants would have redressed the risk of prosecution that plaintiffs asserted as their injury. 173 F.4th at 1217. Here, the United States's asserted injury—the denial of Denver citizens' alleged Second Amendment right to possess AR-15 style rifles with 16-plus magazines, FAC ¶¶ 7-8, 52; *id.* at 14—cannot be redressed by a favorable outcome in this case *or* in the United States's separate suit against Colorado. The requested injunction would not restrain Denver's independent authority to enforce the state large-capacity magazine law.[2] In the absence of a redressable injury, the amended complaint in this case should be dismissed on standing grounds.

## II. The United States's Challenge Is Not Cognizable Under Section 12601

Even if the United States had standing, it has not brought a cognizable claim under Section 12601. Defendants' motion explained that Section 12601 provides a targeted cause of action to address a pattern or practice of law enforcement officer misconduct. *See* Mot. 16-29. The United States's misguided attempt to use Section

[2] Moreover, in *Sanchez*, suing all potential counterparties for an injunction would have been impossible—there was no way to identify every member of the public who might wish to access streambeds on the plaintiffs' land. Here, by contrast, the United States easily could have named Colorado and its law enforcement agencies as additional defendants.

12601 instead to mount a facial attack on Denver's ordinance is contrary to the federal statute's text, ignores its context, and conflicts with background principles of statutory construction. *See id.* Nothing in the United States's opposition changes that.

**A. The United States brings a facial challenge to the Ordinance**

At the outset, the United States claims it "has not brought a facial challenge." Opp. 3. That is wrong.

"A facial challenge is a head-on attack on a legislative judgment, an assertion that the challenged statute [or ordinance] violates the Constitution in all, or virtually all, of its applications"—as distinguished from a challenge asserting that the Constitution has been violated "under the *particular circumstances* of the case." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016) (cleaned up). A head-on attack on Denver's legislative judgment is precisely what the United States has brought, alleging that the Ordinance itself "violates the Second Amendment." FAC ¶¶ 7-8; *see id.* ¶¶ 16-33 ("The AR Ban Is Unconstitutional"); *id.* ¶¶ 34-41 ("The Magazine Ban Is Unconstitutional"); *id.* ¶ 52 ("[T]he AR Ban and the Magazine [Ban] violate the Second Amendment.").

This case does not involve any "particular circumstances." *Sup. Ct. of N.M.*, 839 F.3d at 907 (emphasis omitted). The amended complaint contains no allegation that Defendants have unconstitutionally enforced the Ordinance against particular individuals or in particular ways. Instead, it makes only the generalized (and

conclusory) allegation that Defendants have "routinely enforced the [Ordinance] for many years and will continue to do so in the future." FAC ¶ 46; *see id.* ¶¶ 50-52. Thus, the United States's position is simply that "Denver's AR Ban and Magazine Ban are unconstitutional." Opp. 1 (footnotes omitted). As Defendants explained in their motion, *see* Mot. 10-12, 19-20, 29, that is a facial challenge.

To the extent the United States is asserting that the Ordinance is unconstitutional only as to AR-15-style rifles with 16-plus magazines, *see, e.g.*, FAC ¶¶ 7-8; *id.* at 14 (seeking injunction against "the Magazine Ban and the AR Ban to the extent it bans the possession of AR-15 style rifles with standard capacity magazines"), that does not change the proper analysis or conclusion here. The law is clear that such a challenge is still "'facial' in that it is not limited to [a] particular case, but challenges the application of the law more broadly to all" AR-15-style rifles with 16-plus magazines. *Doe v. Reed*, 561 U.S. 186, 194 (2010); *accord Sup. Ct. of N.M.*, 839 F.3d at 914.

The United States nevertheless argues that this is not "a facial challenge" because "[t]he word 'facial' does not appear in the Complaint." Opp. 3 & n.4. But "[t]he label is not what matters." *Doe*, 561 U.S. at 194. Because the United States has pleaded no facts about *how* the Defendants are allegedly enforcing the Ordinance in violation of the Constitution—and instead raises "an attack on the [Ordinance] itself," *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015)—the conclusion is inescapable that its challenge is facial. *See United States v. California*,

No. 8:26-cv-01697, 2026 WL 2004372, at *3-4 (C.D. Cal. July 9, 2026) (recognizing that similar lawsuit is a "facial[] challenge").

### B. Section 12601 does not authorize the United States's facial challenge to the Ordinance

The United States tries to justify its use of Section 12601 by isolating and rewriting statutory terms, ignoring their ordinary meaning, and disregarding important context. Its unprecedented interpretation would transform a targeted remedy for police misconduct into a far-ranging federal power to challenge any state or local law, and should be rejected.

#### 1. The United States misinterprets the text of Section 12601

The text of Section 12601 authorizes a cause of action targeting law enforcement officer misconduct, not facial challenges to state and local laws. *See* Mot. 17-21. The United States's contrary interpretation cannot be squared with "the ordinary meaning and structure of [Section 12601] itself." *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019); *see also Moon Seals*, 2026 WL 2547020, at *4.

To start, the United States rests its interpretation primarily on its preferred definition of a single word, "conduct." *See* Opp. 10-11, 19 (defining "conduct" as "personal behavior"). But that argument fails on its own terms, as the United States's allegations have nothing to do with law enforcement officers' "personal behavior"; instead, it attacks the Ordinance as written. And even the United

States's own source also defines "conduct" as "the *manner* in which a person behaves," Black's Law Dictionary (12th ed. 2024) (emphasis added), further supporting the fact that Section 12601 concerns violations arising from the manner in which law enforcement officers carry out their duties. *See* Mot. 17-19.

More fundamentally, the United States's interpretation is flawed because courts do not "look[] … to isolated words … 'in a vacuum.'" *Gundy v. United States*, 588 U.S. 128, 140-41 (2019) (citations omitted). Instead, statutory interpretation is "a 'holistic endeavor'" that considers words "in their context and with a view to their place in the overall statutory scheme." *Id.* (citations omitted). Yet the United States reads one statutory phrase "in isolation" while "ignor[ing]" the other words in Section 12601. *See In re Gordon*, 791 F.3d 1182, 1185 (10th Cir. 2015) (rejecting such an interpretation of another statute).[3] Defendants, by contrast, read "conduct" alongside other key terms in Section 12601(a) (*e.g.*, "engage in," "pattern," "practice," "that deprives") and the provision's surrounding text to understand its meaning. *See* Mot. 17-20.

The United States also wrongly eschews Section 12601's ordinary meaning in favor of an artificially disjointed one. As Defendants explained, statutory interpretation focuses on a law's ordinary meaning, and "is not merely an exercise

[3] When the United States does acknowledge the other text in Section 12601, it incorrectly dices up the provision into discrete elements with no consideration of how those terms interact with each other or the statutory scheme as a whole. *See* Opp. 6-7.

in ascertaining the outer limits of a word's definitional possibilities." Mot. 17 (quoting *FCC v. AT & T Inc.*, 562 U.S. 397, 407 (2011) (cleaned up)). The United States agrees in theory, and acknowledges that a "good textualist is not a literalist." Opp. 19 (quoting Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 24 (1997)). Yet it asks this Court to interpret Section 12601 to include the general enforcement of criminal laws because "[a]rresting a person for violating a statute" is one possible meaning, in isolation, of the word "conduct." Opp. 18-20. In support, it offers a lengthy diatribe on how "literal" readings are permitted even if "literalist" ones are not, based on a misunderstanding of one case that Defendants referenced in a string cite. *See id.* at 18-19.[4] And its proffered hypothetical, in which law enforcement generally enforces a large-capacity magazine restriction, *see* Opp. 19-20, simply underscores that its dispute is with the restriction itself, rather than anything specific about how law enforcement officers execute their duties.

Finally, it is the United States—and not Defendants—that seeks to rewrite the statute. *See id.* at 11. It asserts that Section 12601 should be construed in lockstep with Section 1983 based on the canon of *in pari materia*. *See id.* at 14-15. That canon permits courts to resolve an ambiguity in one statute by reference to

---

[4] The United States does not explain the supposed difference between "literal" and "literalist" readings or explain why *Chevron USA Inc. v. Plaquemines Parish*, 608 U.S. 1 (2026), supports its reading of Section 12601. Nor could it, given that the Court there adopted an "ordinary understanding" of the statutory term (as Defendants propose here) as opposed to a definition "so broad that it [was] meaningless" (like the United States favors). *See id.* at 11-12.

another statute "pertain[ing] to the same subject" based on the principle that "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243-44 (1972); *see also United States v. McCarthy*, 174 F.4th 1254, 1261-63 (10th Cir. 2026). But the United States seeks to use this canon for the opposite purpose: to construe *different* language in separate statutes the same, rather than the *same* word consistently across statutes. *Compare* 42 U.S.C. § 1983 (providing a private cause of action against "[e]very person who, under color of any [law] ... subject[s]" a person "to the deprivation of" their federal rights"), *with* 34 U.S.C. § 12601 (providing the Attorney General with a cause of action to challenge "a pattern or practice of conduct by law enforcement officers … that deprives persons of [federal] rights"). The United States ignores the distinct language in Sections 1983 and 12601, and instead emphasizes that both statutes provide federal civil rights remedies and have a "remedial scope." Opp. 14-15. But the statutes "play different roles in achieving the[] broad, common goal[]" of protecting federal civil rights, *Erlenbaugh*, 409 U.S. at 245, with Section 1983 providing a broad, private remedy, and Section 12601 a targeted remedy for the federal government. Moreover, the fact that the statutes are both remedial "doesn't give [a] court license to read into the statute something that isn't there." *Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1220 (10th Cir. 2018) (citation omitted). "Had Congress intended" to provide the equivalent of Section 1983's broad

remedy when enacting Section 12601 (a century later), "it could easily have" done so. *Charboneau v. Davis*, 87 F.4th 443, 454 (9th Cir. 2023).[5]

### 2. The United States improperly disregards additional context

The United States's insistence that the Court ignore Section 12601's broader context—such as its legal backdrop, related statutes, past practice, and federalism principles—is contrary to Supreme Court and Tenth Circuit precedent. *See* Mot. 21-28. The Supreme Court has repeatedly made clear that context beyond the statute itself is a crucial component of textual analysis. *See, e.g.*, *Fischer v. United States*, 603 U.S. 480, 492-93 (2024) (considering "broader context" of criminal code). Just recently, in *Trump v. Cook*, the Court reiterated that "[i]t is hardly atextual … to read text in context." 146 S. Ct. 2234, 2252 (2026). "If anything," the Court emphasized, "it would be atextual to do otherwise." *Id.* (considering "baseline against which Congress legislated"). In other words, as the Tenth Circuit has explained, broader statutory context establishes the "baseline upon which we perform our statutory analysis." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1236 (10th Cir. 2026). Nor does considering such context reflect a "devotion to legislative history at the expense of the plain text." *See* Opp. 25. Rather, analysis of a statute's

[5] For similar reasons, the United States is wrong that its interpretation properly "give[s] effect to the text in full" rather than deleting, or ignoring, key text. Opp. 12. The United States ignores that Congress specifically chose to focus on "conduct by law enforcement officers … that deprives" individuals of their rights, *see* Mot. 19-20, rather than adopting broader language (like it did in Section 1983).

"broader context" is necessary to ascertain that statute's "plain meaning." *Moon Seals*, 2026 WL 2547020, at *4.[6]

Having minimized the importance of statutory context, the United States fails to meaningfully address the "legal backdrop" against which Section 12601 was drafted or the history of other "pattern or practice" statutes. *See* Mot. 22-24. The United States also fails to address at all the "principles of federalism inherent in our constitutional structure" that inform how statutes are read. *Id.* at 26-28 (quoting *Bond v. United States*, 572 U.S. 844, 856 (2014)).

Moreover, as the Tenth Circuit has recently stressed, statutory context "includes 'the longstanding practice of the government.'" *Santillan Quiroz*, 180 F.4th at 1236 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024)). The United States's attempt to dismiss the clear holding of *Santillan Quiroz* on this point is unavailing. It is irrelevant that the Department of Justice has never issued a regulation limiting Section 12601 to "only excessive force allegations." *See* Opp. 23. Defendants agree that Section 12601 is not so limited. *See* Mot. 10 (highlighting past uses of Section 12601 to address a variety of police misconduct including racial

---

[6] Contrary to what the United States contends, *see* Opp. 2, 9, 24-26, Defendants do not favor legislative history over statutory text. Rather, as Defendants explained, "there is no need to consider legislative history" given that Section 12601's text is unambiguous. Mot. 28. But if the Court does consider legislative history, it confirms what the text already conveys: Section 12601 authorizes a targeted cause of action to address police misconduct, not, as the United States would have it, a free-floating power to bring facial challenges to state and local laws. *See id.*

discrimination and unlawful stops, searches, and seizures). More importantly, the relevance of past practice is not limited to where the executive branch issues a formal regulation articulating its position. *See Santillan Quiroz*, 180 F.4th at 1236 (explaining that an interpretation borne out in practice for "nearly thirty years" "qualifies as such a longstanding practice"). Far from having "no similarity to this case," Opp. 23, *Santillan Quiroz* underscores that the decades of "unbroken interpretation and practice," 180 F.4th at 1236, preceding the United States's recent slate of Section 12601 complaints inform the analysis of that provision's scope. So too do the other cases Defendants point to in their motion. *See* Mot. 25-26.

The United States attempts to sidestep this past practice by arguing that the Department of Justice reports attached to Defendants' motion to dismiss should be "disregard[ed]" as "extraneous materials." Opp. 5. But the Court may take judicial notice of government records, and judicially noticeable documents are properly considered on a Rule 12(b)(6) motion to dismiss. *See* Mot. 6 n.4 (citing cases).[7] The United States contends that Defendants' exhibits 1 and 2 are not subject to judicial notice because they create a factual dispute, *see* Opp. 4-6, yet it has not identified

[7] The cases the United States cites (Opp. 4-5) do not say otherwise. In fact, *Brown v. City of Tulsa*, 124 F.4th 1251 (10th Cir. 2025), made clear that "matters subject to judicial notice" can be considered when deciding a motion to dismiss. *Id.* at 1263-64. And *Berk v. Choy*, 607 U.S. 187, 193 (2026), discussed Rule 12(d)'s reference to "matters outside the pleadings" in the context of concluding that a complaint did not require a third-party affidavit to survive dismissal; it said nothing about matters subject to judicial notice.

any facts in these exhibits that are false or inaccurate. What the United States really disputes is the conclusion the Court should draw from those materials about the scope of Section 12601. *See* Opp. 8 (characterizing Defendants' motion as "based on a purely legal argument"). That legal dispute is not a reason to disregard important context about Section 12601. *Cf. California*, 2026 WL 2004372, at *4 (relying on the report attached here as Defendants' exhibit 2). In any event, because Defendants offer these documents in aid of statutory interpretation, the Court may also properly consider them as legislative facts. *See* Mot. 6 n.4; *United States v. Bello*, 194 F.3d 18, 22 (1st Cir. 1999) (characterizing a legislative fact as one "useful in … interpreting a statute").

**3. The caselaw the United States cites does not support its position**

The United States's affirmative attempts to demonstrate that its current suit is consistent with past practice also fail. Neither of the cases it relies on—*United States v. County of Maricopa*, 889 F.3d 648 (9th Cir. 2018), and *United States v. Town of Colorado City*, 935 F.3d 804 (9th Cir. 2019); *see* Opp. 2, 4, 16-17, 20-21—supports its position that Section 12601 can be used to challenge a local criminal law, like Denver's Ordinance, on its face.

*County of Maricopa* involved an investigation into law enforcement officers' racially discriminatory conduct in traffic stops. 889 F.3d at 649. The United States alleged that the county did not have in place training and oversight practices to

prevent such conduct. Compl. ¶¶ 5, 65, 79, *United States v. County of Maricopa*, No. 2:12-cv-00981 (D. Ariz. May 10, 2012), Dkt. 1. It also challenged "official policies" fostering that conduct, which were "instituted by" the sheriff himself as "a final policymaker for the County." 889 F.3d at 649, 653. This straightforward application of Section 12601 to redress a pattern and practice of police misconduct provides no support for the United States's attempt here to challenge a legislative enactment as written.

*Town of Colorado City* likewise involved systemic police misconduct, not a facial challenge to a statute or ordinance: the United States alleged, and the court found, that the town's police force "selectively enforced the law based upon religion." 935 F.3d at 806-07 (cleaned up). The practices alleged, including "unreasonable seizure of property, unreasonable seizure of a person, and arrest without probable cause," are precisely the kind of law enforcement conduct that fall within the scope of Section 12601. *See Town of Colorado City*, No. 3:12-cv-08123, 2017 WL 1384353, at *8 (D. Ariz. Apr. 18, 2017), *aff'd*, 935 F.3d 804 (9th Cir. 2019).

Nor does the 2015 report on the investigation into the Ferguson Police Department support the United States's position. *See* Opp. 16-17 (citing Civ. Rts. Div., U.S. Dep't of Just., *Report of Investigation of the Ferguson Police Department* (Mar. 4, 2015) ("Report")). The report's mention of a potentially unconstitutionally vague local ordinance was in the context of explaining why certain arrests and stops violated the Fourth Amendment. *See* Report at 20-21. And the United States fails to

mention that the lawsuit resulting from the investigation did not challenge that or any other local ordinance as facially unconstitutional. Compl., *United States v. City of Ferguson*, No. 4:16-cv-00180 (E.D. Mo. Feb. 10, 2016), Dkt. 1.[8]

Lastly, the United States's claim that there is no caselaw supporting Defendants' reading of Section 12601 is unpersuasive. As the United States itself notes, very few decisions have interpreted Section 12601. *See* Opp. 16. That none of these cases expressly rejected the kind of suit at issue here is precisely because, before this past year, no such suit had been brought. And the one court to have addressed the United States's new interpretation of Section 12601 recently denied a temporary restraining order, observing that "the use of Section 12601 to facially challenge a state criminal law is, at the very least, a novel approach that deviates from the way the statute has historically been enforced." *California*, 2026 WL 2004372, at *4.

## III. The United States Fails to Plead a Pattern or Practice of Conduct by Law Enforcement Officers

In the motion to dismiss, Defendants explained that the amended complaint "fails to plead any facts showing the supposed 'pattern or practice of conduct by law

[8] The United States's vague references to past uses of Section 12601 to challenge "enforcement of local ordinances that are facially unconstitutional," Opp. 21 n.17, are unavailing. It has not identified a single specific prior case in which Section 12601 has been used to challenge a local ordinance as written. *See California*, 2026 WL 2004372, at *3 (rejecting this same claim as lacking "any authority or evidence"). Given that the Department of Justice is in the best position to uncover such a case, its failure to do so indicates that none exists.

enforcement officers'" that Section 12601 requires. Mot. 29. In response, the United States leans heavily on the *Twombly*/*Iqbal* plausibility standard, asserting that the existence of a pattern or practice is not implausible. *See* Opp. 26-27 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But Defendants' argument is not that a pattern or practice of law enforcement conduct is implausible. Rather, the point is that the United States *has not even pleaded any facts supporting* such a pattern or practice—or even a *single incident* of actual enforcement of the Ordinance—in the first place. *See* Mot. 29-30. That is not sufficient to state a claim under Section 12601.

The United States tries to minimize its pleading burden by pointing to the Supreme Court's recent decision in *Berk v. Choy*, 607 U.S. 187 (2026). *See* Opp. 6. *Berk* does nothing to help its cause. There, the Court held that a state law requiring all medical malpractice complaints to be accompanied by an expert affidavit did not apply in federal court, because the state law "demand[ed] more" than the federal pleading standards by requiring "evidence of the claim." 607 U.S. at 193-94; *see also supra* note 7. But the Court did not lessen a plaintiff's burden under the federal pleading standards themselves, which require more than "naked assertions devoid of further factual enhancement," and "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," *Iqbal*, 556 U.S. at 678-79 (cleaned up)—which is all the United States presents here.

In addition, the United States's assertion that Defendants "admit" that they enforce or have enforced the Ordinance is unavailing. *See* Opp. 26-27. It points to the first page of the Defendants' motion and to the letter attached as exhibit 4, *see id.* at 26, but in neither did Defendants "admit" to enforcing the Ordinance, much less admit to the sort of pattern or practice of law enforcement misconduct required to state a claim under Section 12601.[9]

Nor can the United States avoid dismissal by citing a pre-enforcement standing case to argue that, because Defendants have not "disavow[ed] enforcement" of the Ordinance, "enforcement of the law is presumed." Opp. 27 n.21 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)). That is inapposite. It is the United States's burden to plead "a pattern or practice of conduct by law enforcement officers" causing their alleged constitutional injury. They have not come close to doing so. *See* Mot. 29-30. Dismissal on pleading grounds is thus fully warranted.

---

[9] The motion simply observes that the Ordinance has existed for decades, Mot. 1, and the letter merely recites that the United States had requested that Denver "stop enforcing" the Ordinance, "declare [it] unconstitutional, and refrain from enacting similar laws in the future"—a request the letter correctly described as "baseless, irresponsible, and a clear overreach of the federal government's power," Ex. 4, at 1.

## IV. The Court Should Dismiss the Amended Complaint Without Leave to Amend

The United States purports to "reserve[] the right to amend its complaint again to assert identical claims in this case" if the amended complaint is dismissed for failure to establish redressability. Opp. 28. But the United States has already been given multiple opportunities to amend via this Court's robust meet-and-confer process. Defendants identified this deficiency in its pleading during that process, but the United States deliberately chose not to address it. FAC ¶ 41; Mot. Cert. of Conferral; *see also Intelligent Designs 2000 Corp. v. CCM Assembly & Mfg., Inc.*, No. 1:15-cv-01609, 2015 WL 8267827, at *1 (D. Colo. Dec. 7, 2015) (explaining that "[t]he point of the conferral requirement is … to limit the issues brought before the Court" (emphasis omitted)). And in any event, amendment here would be futile—even if the United States were able to fix its standing and other pleading defects, its facial challenge to the Ordinance is still not cognizable under Section 12601. *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (amendment is futile where complaint would not state a claim for relief). Accordingly, this Court should dismiss without leave to amend. *See Grays v. TSG Auto*, No. 1:18-cv-01762, 2019 WL 13196153, at *5 (D. Colo. June 21, 2019) (denying leave to amend where claim was dismissed because governing statute did not provide private cause of action).

## CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss.

Dated: September 24, 2026

Respectfully submitted,

s/ William J. Taylor, Jr.
Janet Carter
William J. Taylor, Jr.
EVERYTOWN LAW
450 Lexington Avenue
P.O. Box 4184
New York, NY 10163
(646) 324-8215
jcarter@everytown.org
wtaylor@everytown.org

Michiko A. Brown
City Attorney
CITY AND COUNTY OF DENVER
201 West Colfax Avenue
Suite 1207
Denver, CO 80202
(303) 912-5813
michiko.brown@denvergov.org

Carey R. Dunne
Zack Goldberg
Martha Reiser
FREE AND FAIR LITIGATION
GROUP, INC.
266 West 37th Street, 20th Fl.
New York, NY 10018
(646) 434-8604
carey@freeandfair.org
zack@freeandfair.org
martha@freeandfair.org

**CERTIFICATE AS TO ARTIFICIAL INTELLIGENCE USAGE**

I hereby certify that no portion of this filing was drafted by Artificial Intelligence.

Dated: September 24, 2026

s/ William J. Taylor, Jr.
William J. Taylor, Jr.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, I served a true and complete copy of the foregoing DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS upon all parties herein by e-filing with the CM/ECF system maintained by the Court, which will send notification of such filing to the parties of record.

Dated: September 24, 2026

s/ William J. Taylor, Jr.
William J. Taylor, Jr.